In re Christopher L. PALANCA, Debtor.

Christopher L. PALANCA, Plaintiff,

v.

TEXAS GUARANTEED STUDENT LOAN CORPORATION, Defendant.

Bankruptcy No. 96 B 19844.
Adversary No. 96 A 01627.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 12, 1998.

Christopher L. Palanca, Chicago, IL, Pro se.

Mark E. Shure, Kevin T. Keating, Chicago, IL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding, filed by Plaintiff–Debtor Christopher L. Palanca, relates to his bankruptcy case filed under Chapter 7 of the Bankruptcy Code. He seeks here a declaration that his student loan debt to the Texas Guaranteed Student Loan Corporation is dischargeable under 11 U.S.C. § 523(a)(8)(B).[1] Following trial, the Court now makes and enters the following findings of Fact and Conclusions of Law pursuant to which judgment will be entered in favor of Defendant, but subject to reopening of this case within two years under Fed. R. Bankr.P. 4007(a) and (b).

1. In 1987, Plaintiff obtained a Bachelor of Science degree with High Honors from the University of Illinois in Business Administration.

2. Plaintiff attended DePaul University College of Law from August 1987 to May 1990. He financed his education with the proceeds of four student loans made under the provisions of the Guaranteed Student Loan Program. 20 U.S.C. § 1072, et seq.

3. Plaintiff obtained his Juris Doctorate degree from DePaul in 1990.

4. Following his graduation from the DePaul University in 1990, Plaintiff took a job as an associate with a law firm in Chicago,

---

1. Count I brought under § 523(a)(8)(A) was dismissed with prejudice, leaving only Count II under § 523(a)(8)(B).

where he focused his practice in insurance defense. His starting salary at that firm was $30,000 per year.

5. Plaintiff resigned from the foregoing law firm in July 1991, when it declined to give him time off with his ill father. He began practicing law as a sole practitioner. He now practices in several fields, including real estate, bankruptcy, divorce, and general civil litigation. His current business address is 410 South Michigan Avenue, Suite 607, Chicago, Illinois 60605.

6. Plaintiff has remained a sole practitioner from August 1991 to the present. His earnings as an attorney is the only source of income for him and his family. The parties have stipulated that his gross earnings from 1992 to the present were:

| | |
|---|---|
| 1992: | $12,231.35 |
| 1993: | $10,785.00 |
| 1994: | $13,831.00 |
| 1995: | $11,506.00 |
| 1996: | $15,199.00 (Approximately) |
| 1997: | $13,647.48 (Approximately) |

7. Plaintiff is married with three minor children.

8. He resides with his wife, three children, and parents at a home owned by Plaintiff's parents in Crete, Illinois. Each of the Plaintiff's parents have suffered from health problems in the last six years, and his wife is unable to work.

9. The parties stipulated that the Plaintiff's monthly income and expenses are now the following:

| | |
|---|---|
| Rent (incl.heat/elec./water/sewer/cable): | $350.00 |
| Telephone: | $ 25.00 |
| Cellular Telephone: | $ 30.00 |
| Food: | $375.00 |
| Laundry/Dry Cleaning | $ 60.00 |
| Medical/Dental | $ 50.00 |
| Transportation: | $225.00 |
| Clothing: | $ 50.00 |
| School (Misc.): | $ 20.00 |
| Insurance (health—$520; Auto—$83): | $612.50 |
| Loans (auto [2]—$298.55; Business—$310): | $609.15 |
| Recreation: | $ 10.00 |
| Business operations: | $500.00 |
| TOTAL: | $2,916.65 |

10. In 1994, Plaintiff applied for and obtained a loan from the Student Loan Marketing Association in the principal amount of $26,844.68 (the "1994 loan"). The purpose of this loan was to consolidate four previous loans that Plaintiff had earlier obtained under the Guaranteed Student Loan Program to attend DePaul University Law School.

The 1994 loan, which is the loan that Plaintiff seeks to discharge in this action, is currently held by Defendant Texas Guaranteed Student Loan Program and is reinsured by the United States Department of Education. This loan is subject to possible discharge under § 523(a)(8) of the Bankruptcy Code, Title 11 U.S.C.

11. The 1994 loan was and remains repayable over twenty years in accordance with the following schedule:

| | |
|---|---|
| From September 1994 to August 1998 | $178.96/monthly |
| From September 1998 to August 1999 | $201.88/monthly |
| From September 1999 to August 2000 | $256.90/monthly |
| From September 2000 to July 2014 | $256.90/monthly |
| After August 2014 | $264.93/monthly |

12. From June 1994 until he filed his bankruptcy proceeding in July 1996, the Plaintiff made numerous monthly payments of $178.96 on the 1994 loan.

13. Plaintiff testified that he has made no effort to find a job with any other law firm since July 1991. Furthermore, he has not actively sought to find any other legal jobs since that time in business, government, or anything else. Instead, the Plaintiff testified that he wants to remain a sole practitioner, and he has put all his professional efforts into improving his practice, albeit without great financial success as shown by his modest income reflected in Finding No. 6.

14. Further factual findings contained in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

1. Under § 523(a)(8) of the Bankruptcy Code, Title 11 U.S.C., the Plaintiff's indebtedness on his 1994 loan is non-dischargeable unless he establishes that excepting the debt from discharge will impose an "undue hardship" on him and his dependents. In order to obtain a discharge of his loan under § 523(a)(8) of the Bankruptcy Code based upon "undue hardship," Plaintiff must establish the following three factors:

a) Debtor cannot maintain, based on current income and expenses, minimal standard of living for himself and his dependents if forced to repay the loans;

b) Additional circumstances exist indicating that the present financial state of

affairs is likely to persist for a significant portion of the scheduled loan repayment period; and

c) The Debtor has made good faith efforts to repay the loan.

*In re Roberson,* 999 F.2d 1132 (7th Cir.1993).

2. It is uncontested that Plaintiff has met the third prong of the *Roberson* test stated above.

3. Based upon Plaintiff's current income and expenses, this Court finds and concludes that in the present precarious financial situation faced by Plaintiff and his family, he has also met the first prong of the *Roberson* test set forth above. He presently has insufficient income to meet his family's needs even without paying anything on the 1994 loan.

4. In addressing the second prong of the foregoing test, the *Roberson* opinion stated:

The second prong of the [foregoing] test properly recognizes the potential continuing benefit of an education and imputes to the meaning of "undue hardship" a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period. As the proponents of a higher standard for dischargeability recognized:

[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and rely[] for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future. H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6094.

■ 5. For reasons more fully set forth in the oral comments of this Court which were provided at the close of trial (which comments are attached hereto and incorporated herein), the Plaintiff has not met the second prong of the *Roberson* test. The Plaintiff is a young, articulate, well-educated attorney with no physical or mental disability. While he is not currently earning sufficient income in his solo practice to make repayments on his loan without causing severe economic hardship to himself and his family, he has not established an inability to

obtain in the future another position in the legal field or some other job. In fact, the evidence showed that the Plaintiff has never tried to do so. Before Plaintiff could meet his burden, he would have to demonstrate diligent, good faith efforts to obtain a better paying position in order to enhance his current income, that such efforts proved fruitless, and that renewed efforts would be likely to fail over a substantial portion of the scheduled loan repayment period. This he has not established. Accordingly, on the present record judgment must be entered herein in favor of Texas Guaranteed Student Loan Corporation.

■ 6. In *In re Roberson,* the Seventh Circuit recognized that in an appropriate case a bankruptcy court may grant a debtor a deferment in a student loan repayment obligation and grant the Debtor the opportunity to reopen a case at the end of that period in the event a Debtor's financial condition has not improved and demonstrated efforts show that improvement is not possible. *Id.,* 999 F.2d at 1137–38. Such an order will be entered in this case in order to allow Debtor the opportunity to remedy his current financial condition. During this two-year deferment, interest will not continue to run on the note because of the present heavy economic burden carried by Debtor and his family and the crushing economic burden faced by Debtor and his family over the next two years during which he cannot pay a dime on the loan without terrible hardship resulting to himself and his family.

7. In accordance with the foregoing analysis and this Court's oral comments which are made part of this order, judgment will separately be entered in favor of the Defendant whereby Plaintiff's student loan indebtedness will not presently be discharged under § 523(a)(8) of the Bankruptcy Code. However, Plaintiff will be granted a two-year deferment in repaying his obligation under the Note until March 30, 2000, during which time interest at the rate set forth in the Plaintiff's note will not continue to accumulate. Cf. *Dennehy v. Mae,* (Bankr.N.D.Fla. 1996), 201 B.R. 1008, 1013. The Plaintiff may move to reopen this case no later than that date, upon notice to Defendant and a

showing that his current financial condition continues to exist and is likely to continue to exist during a significant portion of the repayment period. Jurisdiction will be reserved until March 30, 2000, to entertain such a motion filed by and continued for hearing that date under Fed. R. Bankr.P. 4007(a) and (b) for leave to reopen the proof in this case and to alter or amend the Judgment to be entered for Defendant. Jurisdiction is reserved to hear and determine such motion and the offered proofs.