**In re Bernard E. LAKEMAKER, Debtor.**

**Resurrection Medical Center, Plaintiff,**

v.

**Bernard E. Lakemaker, Defendant.**

Bankruptcy No. 98–B–20599.

Adversary No. 98–A–02088.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 8, 1999.

Nathan F. Coco, McDermott, Will & Emery, Chicago, IL, for plaintiff.

James H. Himmel, Palos Heights, IL, for debtor.

Joseph A. Rejowski, Chicago, IL, for defendant.

Glenn E. Heyman, Chicago, IL, for trustee.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

Pursuant to an employment contract between the Debtor, Dr. Bernard E. Lakemaker and the Plaintiff, Resurrection Medical Center, Resurrection advanced funds to pay off the Debtor's student loans. Resurrection contends that its claim for the advance is excepted from discharge under the student loan exception, § 523(a)(8)[1], and that the advance was a Health Education Assistance Loan ("HEAL"), protected from bankruptcy discharge by 42 U.S.C. §§ 292 et seq. The facts are stipulated. Resurrection and the Debtor filed cross-motions for summary judgment under Fed. R. Bankr.P. 7056. For the reasons set forth below, this Court denies Resurrection's motion and grants summary judgment in favor of the Debtor.

### UNDISPUTED FACTS

Resurrection and Dr. Lakemaker entered into an employment contract in August, 1994. The contract, as amended, provided for a salary advance by Resurrection to pay off the Debtor's outstanding student loans. Resurrection issued checks to the holders of Lakemaker's student loans in the full amount of his indebtedness. The employment contract provided that the debtor was to repay the advance through deductions from his salary and that any unpaid balance would become due upon the termination of Debtor's employment. About two months after the parties entered into the agreement, Resurrection terminated it. The Debtor did not pay any part of the substantial balance of the advance that remained due. Lakemaker does not dispute the claim, nor does he assert that an undue hardship would result if the debt were not discharged.

In May, 1998, Resurrection obtained a judgment on the debt in the Circuit Court of Cook County, Illinois for $156,130.04. In July, 1998, Lakemaker filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. The sole disputed issue is whether the debt arising from the advance used to pay the student loans is nondischargeable, under either § 523(a)(8) or 42 U.S.C. § 292f(g).

### DISCUSSION

To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issues of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties have stipulated that no material factual disputes exist; they dispute only the legal character of the transaction. Summary judgment is therefore appropriate if the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

**Plaintiff's advance was not an educational loan within the scope of § 523(a)(8).**

Section 523(a)(8) excepts from discharge any debt "for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. § 523(a)(8). In its adversary complaint and motion, Resurrection summarily as-

---

1. Unless otherwise indicated, references to Rules are to the Federal Rules of Bankruptcy Procedure and all statutory references are to Title 11 of the United States Code.

serts that "the Educational Loans were made, insured, or guaranteed by a governmental unit." Adversary Complaint, p. 6. Resurrection argues that its consolidation of the original loans issued to Lakemaker does not change their characterization, and uses the term "Educational Loans" interchangeably to refer to both Lakemaker's original student loans and his current indebtedness to Resurrection, as if there were no distinction between them and the two should be treated as one indebtedness. Because the advance by Resurrection was made pursuant the employment contract, however, this Court will examine the indebtedness to Resurrection separately for purposes of analysis under § 523(a)(8).

■ On its face, Resurrection's advance was not an educational benefit, overpayment or loan. Debtor had completed his education and did not obtain the advance in order to avail himself of an educational opportunity or to acquire some educational benefit. Rather, it was an enticement to employment. While Resurrection repeatedly utilizes the words "education loan" and "consolidation" in its adversary complaint, these words are absent from the contract itself. In the contract, Resurrection agreed "to execute, upon the signing of this agreement, a salary advance/ debt reduction loan." Physician Employment Agreement, § IV, ¶ (o). In the contract amendment, Dr. Lakemaker agrees to accept "a salary advance of One Hundred Fifty–Six Thousand, One Hundred Thirty and 04/100 U.S. Dollars ($156,-130.04) from [Resurrection] as and for repayment of medical education loans." Amendment, ¶ 2. That reference in the amendment is the sole mention of "education," but the transaction is repeatedly characterized as a "salary advance," suggesting, not an education loan, but an enticement for Lakemaker to enter into an employment contract with Resurrection. Further, the advance was available to the debtor only upon the signing of the contract (Agreement, § IV, ¶ (o)) and Debtor was required to pay the full unpaid amount of the indebtedness upon the termination of the employment contract by either party (Amendment, ¶ 6), terms materially different from a typical student loan. The purpose of this transaction was acknowledged by Resurrection's Chief Executive Officer who stated that "under the terms of this Agreement and Amendment, Plaintiff prepaid Defendant's student loans in consideration for Defendant providing medical services for Plaintiff for a specific amount of time." Affidavit of Sister Donna Marie, C.R, ¶ 4.

In its motion for summary judgment, Resurrection attempts to support both its allegation that each of the "Educational Loans" was made, insured or guaranteed by a governmental unit and its allegation that these loans were made pursuant to a program funded by a nonprofit institution solely by reference to a portion of the stipulation that refers to the original student loans. Resurrection, however, provides no evidentiary support demonstrating that the advance by Resurrection was made, insured or guaranteed by a governmental unit or made pursuant to any program.

The salary advance (as opposed to the original loans) was plainly not made, insured or guaranteed by a governmental unit. As a not-for-profit hospital, however, Resurrection qualifies as a nonprofit institution. But so did the similarly situated plaintiff in *Santa Fe Medical Services, Inc. v. Segal (In re Segal)* 57 F.3d 342 (3rd Cir.1995). The court in *Segal* presupposed an educational loan, stating that a loan for an educational purpose by a nonprofit institution would still be insufficient to warrant a finding of nondischargeability in the absence of evidence of an established program pursuant to which the loan was made. *Segal,* 57 F.3d at 347. Here, there is no evidence that the advance (as opposed to the original loans) was made pursuant to any program. Resurrection has therefore failed to bear its burden of proving that the salary advance falls within the

scope of the § 523(a)(8) student loan exception to discharge.

**Plaintiff is not entitled to invoke the discharge protections of 42 U.S.C. § 292f(g).**

 Plaintiff argues that the transaction constitutes both a HEAL loan under 42 U.S.C. §§ 292 et seq.[2], and a consolidation loan entitling it to treatment as a new educational loan. The parties have stipulated that the advance provided a refinancing and consolidation of the original educational loans. A consolidation loan is considered to be a new loan which pays the balances owed on previous loans, extinguishing the original loans and all rights and duties thereunder, and creating new rights and obligations in the new loan. Therefore, for Plaintiff to obtain the protections of 42 U.S.C. §§ 292 et seq., it must show that its salary advance was granted under the HEAL Program. HEAL loans have separate requirements for discharge, imposing an even greater burden on the debtor seeking discharge of a HEAL loan than that typically imposed by § 523(a)(8). While Resurrection wishes to invoke these stringent requirements, the fact that the advance was not insured by the Department of Health and Human Services and that the agreement and its amendment make no mention whatsoever of 42 U.S.C. §§ 292 et seq., demonstrate that the advance was not a loan insured under the HEAL Program as required by § 292f(g). Therefore, Resurrection is not entitled to the protections of the HEAL program.

**The salary advance is not a consolidation loan excepted from discharge as new education loan.**

 It is well-settled that the consolidation of educational loans can result in a new educational loan, nondischargeable under § 523(a)(8). See *Palanca v. Texas Guaranteed Student Loan Corporation* *(In re Palanca)*, 219 B.R. 502 (Bankr. N.D.Ill.1998); *Martin v. Great Lakes Higher Education Corporation (In re Martin)*, 137 B.R. 770 (Bankr.W.D.Mo. 1992). Although the parties have stipulated that the advance constituted a consolidation, that does not automatically bring the new loan within the terms of § 523(a)(8). Consolidation loans that have been excepted from discharge were made under 20 U.S.C. § 1078–3. See *Hiatt v. Indiana State Student Assistance Commission*, 36 F.3d 21, (7th Cir.1994); See also, *In re Palanca*, 219 B.R. 502 (Bankr. N.D.Ill.1998). Such consolidation loans are guaranteed by the Secretary of the Department of Education and are subject to requirements specified in 20 U.S.C. § 1078–3. Also, because such loans are guaranteed by a governmental unit and issued under the Higher Education Act, the consolidation loans often meet the requirements of § 523(a)(8) of their own right. See *In re Martin*, 137 B.R. 770, 772. In this case, there is no indication that the transaction was guaranteed by anyone, or that the requirements of 20 U.S.C. § 1078–3 have been met. Here, the consolidation loan was made without reference to the Higher Education Act and without adherence to its provisions. Thus, while the advance consolidated Debtor's student loans, that is not enough to bring Resurrection's claim within the student loan exception.

**Plaintiff is not subrogated to any right of the original lenders to have the debt excepted from discharge.**

 Resurrection last argues that it is entitled to equitable subrogation to the rights of the Debtor's original educational lenders. Subrogation allows a party who pays a debt for another to recover from the original debtor to prevent an unjust enrichment from occurring. Application of the equitable doctrine of subrogation de-

---

**2.** HEAL loans are loans typically granted by private lenders but guaranteed by the Department of Health and Human Services with adherence to the requirements of 42 U.S.C. §§ 292 et seq. *In re Johnson*, 787 F.2d 1179, fn. 1 (7th Cir.1986).

pends on the facts and circumstances of each case. *See Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622, 624 (1992). Occurring most frequently in the tax context, it is beyond dispute that subrogation extends to nondischargeability if the facts and circumstances of the case warrant such relief. *See Western Surety Co. v. Waite*, 698 F.2d 1177 (11th Cir.1983); *Cooper v. Cooper*, 83 B.R. 544, 17 Bankr.Ct.Dec. 276 (C.D.Ill. 1988); *Safeco Insurance Company v. Norris*, 107 B.R. 592 (Bankr.E.D.Tenn.1991). While less common, subrogation has also been extended to matters regarding nondischargeability of student loans. *In re Mattingly*, 226 B.R. 583 (Bankr.W.D.Ky. 1998). There are two significant differences between *Mattingly* and this case, however. First, NJHEAA, the loan purchaser in *Mattingly*, was an educational lender who paid the balance of the note to purchase the note, and obtained a formal assignment of the note. Resurrection, not an educational lender, did not obtain an assignment of rights, nor did it represent, either to Lakemaker or to the original lenders that it was "purchasing" the loan. Second, while no express contractual relationship existed between NJHEAA and Mattingly, here there is a contract, drafted by Resurrection, which governs the relationship and obligations of the parties.

■ The express contract makes subrogation inappropriate here. Resurrection could have structured the transaction differently. Instead, it made the advance to the Debtor on materially different terms than the original student loans and without the disclosures and other forms usually accompanying student loans. Also, while Resurrection argues that it is entitled to subrogation because the payments flowed directly to Debtor's educational lenders, the contract amendment provides that Lakemaker "agrees to accept a salary advance," demonstrating that the transaction was a loan to him. Amendment, ¶ 2. Further, because the advance paid Debtor's loans, it extinguished the obligations of the old loans and created new rights and obligations of the parties, which were set forth in the contract drafted by Resurrection.

■ The sole alleged "inequity" in this case is that the salary advance is not protected from Debtor's attempts to obtain a fresh start, the provision of which is a central equitable purpose of the bankruptcy system. The court in *Segal* extensively examined the purposes behind the § 523(a)(8) exemption, stating:

> By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education—places which lend money or guarantee loans to individuals for educational purposes—from bankruptcy discharge. Because such loans are not based upon a borrower's proven credit-worthiness, and because they serve a purpose which Congress sought to encourage, Section 523(a)(8) protects the lender when a borrower, who often would not qualify under traditional underwriting standards, files a chapter 7 Bankruptcy.

*In re Segal*, 57 F.3d at 348 *citing In re Merchant*, 958 F.2d at 740. In this case, neither Lakemaker nor Resurrection are typical of the parties envisioned by § 523(a)(8). Resurrection was not lending to the typical high-risk, low income student who often receives such loans and Resurrection had a clear financial motivation other than the expected return on the loan—it wished to secure the professional services of Lakemaker for a lengthy period of time.

In holding that the debt at issue in *Segal* was dischargeable, the court said that "in light of what we have determined to be the intended purpose of section 523(a)(8), it is also significant that whether or not Sante Fe is ultimately repaid by the Debtors, neither the federal treasury, the solvency of the NHSC nor the public service obligation of Dr. Crowe will be affected. The debt to the educational lending program has been repaid." *Id.*, 54 F.3d at 349–350.

The same is true in this case. The debts were fully repaid to the various governmental and non-profit agencies who loaned funds to Lakemaker during his education.

Further, the court, in *Segal* explains that if § 523(a)(8) is to be given a broad enough reading so as to include such transactions as a salary advance pursuant to an employment contract, a wide range of additional transactions including personal and commercial loans, such as credit card cash advances used to make a student loan payment, would also be nondischargeable under § 523(a)(8). As the court states, the language of § 523(a)(8) will not support such a broad extension of its terms. *Id.* at 348. That is particularly so in that the § 523(a) exceptions are to be narrowly construed.

### CONCLUSION

The judgment obtained by Resurrection against Dr. Lakemaker is not excepted from his chapter 7 discharge. Plaintiff's motion for summary judgment or judgment on the pleadings in its favor is hereby denied. Debtor's motion for summary judgment in his favor is granted. Judgment will be entered in favor of the Debtor.