In the Matter of Jerry L.
ROBERSON, Debtor.

Appeal of ILLINOIS STUDENT
ASSISTANCE COMMISSION.

No. 92–2103.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 27, 1993.

Decided July 20, 1993.

Roland W. Burris, Mark E. Wilson (argued), Office of Atty. Gen., Civ. Appeals Div., Chicago, IL, for Illinois Student Assistance Com'n.

David F. Black (argued), UAW–Chrysler Legal Services Plan, Belvidere, IL, for Jerry L. Roberson.

Before CUMMINGS and KANNE, Circuit Judges, and MIHM, Chief District Judge.*

KANNE, Circuit Judge.

In 1976, the debtor, Jerry Roberson, graduated from high school and enlisted in the United States Army. After serving for three years as a power generator/equipment repairman and operator, he opted for a career change. Upon receiving his honorable discharge in 1979, Mr. Roberson enrolled in Kishwaukee Community College, from which he received an associate of science degree in industry and technology in 1982. In the fall of 1983, Mr. Roberson enrolled at Northern Illinois University and, in the spring of 1986, earned a bachelor of science degree in industrial technology. Mr. Roberson financed his education at Kishwaukee and at Northern Illinois with $9,702 in student loans that were guaranteed by the Illinois Student Assistance Commission.

While attending Northern Illinois, Mr. Roberson began working as an automobile assembler at Chrysler Corporation in 1984. His employment at Chrysler continued after his graduation, apparently because his wages as an assembler exceeded those of any job

* The Honorable Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, is sitting by designation.

that his degree in industrial technology would enable him to immediately obtain. He earned approximately $33,000 at Chrysler in 1988, and another $30,000 in 1989.

Mr. Roberson's life began to fall apart in 1990. In January, he received his second conviction for driving under the influence of alcohol, resulting in the loss of his driver's license. He was laid off at Chrysler in February; in April his marriage was judicially dissolved. The divorce judgment ordered him to pay $121.60 a week in child support and awarded possession of the marital residence and automobile to his former wife. Without steady employment, Mr. Roberson's income plummeted to only $6,000 for that year, leaving him unable to pay his creditors.

On September 28, 1990, he filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. At the time of filing, he had an estimated $680 in total monthly expenses and no monthly income. Mr. Roberson reportedly possessed approximately $18,357 in assets and over $34,000 in debts.

In connection with his bankruptcy proceedings, Mr. Roberson filed a complaint against the Student Assistance Commission on April 9, 1990, requesting discharge of the unpaid balance on his student loans. While government guaranteed student loans generally may not be discharged in bankruptcy, 11 U.S.C. § 523(a)(8)(B) permits the discharge of such loans when failure to do so would "impose undue hardship on the debtor and the debtor's dependents."[1] After conducting a hearing on the issue, the bankruptcy court determined that the failure to discharge the student loans would not inflict "undue hardship" on Mr. Roberson. Consequently, the

bankruptcy court declined to discharge the student loans, but did order a two-year deferment in the payment of·such loans to allow Mr. Roberson to financially recover. Upon Mr. Roberson's appeal, the district court reversed the bankruptcy court's decision and discharged the student loans. 138 B.R. 885 The Commission filed a timely notice of appeal, presenting us with the issue of whether Mr. Roberson's circumstances warrant discharge of his student loans under the undue hardship exception of § 523(a)(8)(B).

■ Before addressing how the failure to discharge the student loans would affect Mr. Roberson, we must ascertain the meaning of "undue hardship" under § 523(a)(8)(B). Such an inquiry constitutes a question of law subject to *de novo* review. *See Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). The Bankruptcy Code does not define "undue hardship," and, although numerous lower courts have applied § 523(a)(8)(B), little appellate court precedent interpreting the term exists. In addressing the undue hardship exception, both the bankruptcy court and the district court applied the three-pronged test articulated in *In re Johnson*, 5 Bankr.Ct.Dec. 532 (Bankr.E.D.Pa.1979):

> (1) Mechanical Test: The court must ask: Will the debtor's future financial resources for the longest foreseeable period of time allowed for the repayment of the loan be sufficient to support the debtor and his dependent[s] at a subsistence or poverty standard of living, as well as to fund repayment of the student loan?

> \* \* \* \* \* \*

> (2) Good Faith Test: Here, the court asks two questions:

---

1. Section 523(a)(8) prohibits the discharge of an individual debtor from any debt:

   for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

   (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

   Mr. Roberson does not appeal the bankruptcy court's holding that his loans are not dischargeable under § 523(a)(8)(A), which at the time the bankruptcy court heard the case permitted the discharge of student loans that became due more than five years before the petition's filing, rather than the seven-year period contained in the current version.

(a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources or secure employment?

(b) If "yes," then would lack of such negligence or irresponsibility have altered the answer to the mechanical test?

\* \* \* \* \* \*

(3) ... Policy Test: The court must ask: Do the circumstances—*i.e.*, the amount and percentage of the total indebtedness of the student loan and the employment prospects of the petitioner indicate:

(a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

(b) That the debtor has definitely benefitted financially from the education which the loan helped to finance?

*Id.* at 544.[2]

We decline the lower courts' and Mr. Roberson's invitation to adopt the *Johnson* test, and instead, for the reasons discussed below, adopt the undue hardship test set forth by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam).

"[U]ndue hardship" requir[es] a three-part showing (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 396.

■ The first prong of *Brunner* requires an examination of the debtor's current finan-

cial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary. Bankruptcy courts have routinely applied this requirement as the bare minimum to assert a claim of "undue hardship" warranting discharge of student loans. *See, e.g., In re Ipsen*, 149 B.R. 583, 585–86 (Bankr.W.D.Mo.1992). Student loans "should not as a matter of policy be dischargeable before [the debtor] has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt." Comm'n on the Bankruptcy Laws of the United States, Report, H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n. 15 (1973). In light of the heightened standard for dischargeability of student loans, an examination into the debtor's ability to maintain a minimal standard of living comports with common sense. *Brunner*, 831 F.2d at 396. This test should serve as the starting point for the § 523(a)(8)(B) inquiry since information regarding the debtor's current financial situation generally will be concrete and readily obtainable; only if the debtor meets this test should a court examine the other two *Brunner* requirements.

■ The second prong of the *Brunner* test properly recognizes the potential continuing benefit of an education, and imputes to the meaning of "undue hardship" a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period. As the proponents of a higher standard for dischargeability recognized:

[E]ducational loans are different from most loans. They are made without busi-

---

**2.** The bankruptcy court did not expressly state that it was applying the *Johnson* test, but in effect applied these same three requirements for discharge. The bankruptcy court held that although he possessed "a fair earning history and potential," Mr. Roberson met the mechanical test for discharge, considering his expenses far exceeded his present or near-term income, and had also satisfied the good faith test. However, the bankruptcy court concluded that Mr. Roberson failed the second part of the policy test because, in the future, he will be able to use some of the skills acquired through his education and be-

cause his lack of a driver's license, which was hampering his current employment efforts, was "an arguably self-inflicted result" of his convictions for driving under the influence of alcohol.

On appeal, the district court held that the bankruptcy court erred by applying the policy test after it had found that Mr. Roberson satisfied the mechanical and good faith tests for discharge. Noting the bankruptcy court considered the driving under the influence prosecutions only under the policy test, the district court held that these convictions did not preclude a finding that Mr. Roberson met the good faith test.

ness considerations, without security, without cosigners, and rely[ ] for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6094. Accordingly, "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Briscoe,* 16 B.R. 128, 131 (Bankr.S.D.N.Y. 1981). Upon graduation, the student borrower's outstanding student loans often will dwarf his assets. Even though in the long run a government financed education may generate substantial returns, if steady employment is not immediately forthcoming bankruptcy provides an attractive means by which the student may eliminate frustrating and burdensome student loan payments. "Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" *Brunner,* 831 F.2d at 396.

■ Upon the debtor's satisfaction of the first two requirements for discharge, the court should examine the third prong of the *Brunner* test—whether the debtor has made a good faith effort to repay his loans. While our nation is hailed as the land of opportunity, few would dispute that higher education provides a vehicle to travel many of the roads to financial prosperity. In recognition of the role education plays in the pursuit of the value of equal opportunity, Congress made student loans available to those who otherwise may not have been able to receive adequate financing of a college education from private lenders. With the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses. *See Johnson,* 5 Bankr.Ct.Dec. at 540–42. Furthermore, undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from "factors beyond· his reasonable control." Comm'n on the Bankruptcy Laws of the United States, Report, *supra,* Pt. II, at 140 n. 16. *See also Briscoe,* 16 B.R. at 130–31 (good faith inquiry includes "whether the debtor was negligent or irresponsible in conducting his financial affairs such that the debtor's misfortune is self-imposed"); *Perkins v. Vermont Student Assistance Corp.,* 11 B.R. 160, 161 (Bankr. D.Vt.1980) (buying a new car was a "self [-]imposed hardship"); *In re Conner,* 89 B.R. 744, 749 (Bankr.N.D.Ill.1988) (finding that debtor imposed hardship upon herself by choosing to send her children to expensive schools).

■ Although in a different format, the *Johnson* test addresses the same three requirements as *Brunner,* but proceeds to implement an additional "policy test." Because the *Brunner* requirements effectively weed out those bankruptcy petitions primarily aimed at avoiding repayment of student loans (the first inquiry under the *Johnson* policy test), we see no need for the application of a separate policy test. More importantly, the second prong of the *Johnson* policy test improperly considers whether the debtor "has definitely benefitted financially from the education which the loan helped to finance." 5 Bankr.Ct.Dec. at 544. Such an inquiry conflicts with the basic concept of government-backed student loans.

As the lower court in *Brunner* stated, "[c]onsideration of the "value" of the education in making a decision to discharge turns the government into an insurer of educational value." 46 B.R. 752, 756 n. 3 (S.D.N.Y.1985). Congress' decision to increase the availability of higher education through student loans does not necessarily equate to a decision to insure the future success of each student taking advantage of that opportunity. The government guarantees repayment of the loan to the private lender so that those who, because of their current wealth and future earning potential would not be eligible to receive any financing or only financing at a higher rate of interest, may nonetheless receive an education.

The government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow. Hence, we find *Johnson's* policy test inappropriate and decline to apply it.

■ Having adopted the Second Circuit's test for undue hardship, we turn to the inquiry of whether Mr. Roberson's circumstances meet that test, a question of law subject to *de novo* review. *Brunner,* 831 F.2d at 396. In doing so, we accept the bankruptcy court's findings of fact, with the exception of those that are clearly erroneous, *Newman,* 903 F.2d at 1152, and place the burden on Mr. Roberson to establish that his circumstances warrant discharge of his loans. *In re Webb,* 132 B.R. 199, 201 (Bankr.M.D.Fla.1991); *In re Ealy,* 78 B.R. 897, 898 (Bankr.C.D.Ill. 1987).

■ With regard to Mr. Roberson's financial condition, at the time of the hearing he had no income and an estimated $680 per month in expenses, including $40 a week to rent a one room apartment with no kitchen or toilet. In addition, the $34,395 in debts listed in his bankruptcy petition overwhelms his $18,357 in assets, $11,250 of which represents an illiquid interest in the house that his former wife possesses. Hence, both parties agree that his financial condition at the time of the petition prevented Mr. Roberson from maintaining a minimal standard of living and making payments on the student loans.

■ Addressing the second requirement for discharge, the parties dispute whether the bankruptcy court's factual findings lead to the conclusion that Mr. Roberson's financial condition is only temporary or will extend over a large portion of the repayment period. In particular, the parties refer to the following excerpt from the bankruptcy court's opinion:

The Debtor's Petition and testimony at trial, on its face, indicate a fair earning history and potential. The Debtor's past income has been substantial. The Debtor's present and near-term income, however, appears speculative at best.

We accept the Commission's view that the bankruptcy court factually found that Mr. Roberson's financial straits were not likely to continue for an extended period of time. Unquestionably, the short-term outlook is dismal: "[T]he Debtor was unemployed at the time of the trial with slight prospects for employment in the near future with his lack of transportation and [his wrist and back injuries]." However, the bankruptcy court found that these impediments would not prohibit gainful employment in the future, noting that Mr. Roberson will be eligible for a new driver's license in 1993 and finding that his medical condition does not appear "insurmountable." More importantly, the bankruptcy court's decision to allow the debtor a "two-year deferment to enable him to get back on his feet" supports the view that the debtor's hardship will not continue over an extended period.

While any precise prediction of his future earnings and expenses is necessarily speculative, Mr. Roberson has not indicated his road to recovery is obstructed by the type of barrier that would lead us to believe he will lack the ability to repay for several years. *See, e.g., In re Norman,* 25 B.R. 545, 550 (Bankr.S.D.Cal.1982) (psychiatric problems prevent work); *In re Siebert,* 10 B.R. 704, 705 (Bankr.S.D.Ohio 1981) (lack of usable job skills and severely limited education); *In re Clay,* 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981) (required to fully support dependents). Rather, the bankruptcy court found that "he will be able to use the skills he learned with the loan proceeds, and that he simply needs to get through some tough times." Consequently, while the bankruptcy court presented a bleak forecast for the near future, its factual findings lead us to conclude that the debtor's dire straits are only temporary, and thus he has failed to demonstrate "undue hardship" as required for the discharge of his student loans under § 523(a)(8)(B).

Much of Mr. Roberson's inability to find and hold employment relates to the transportation problems caused by his two drunk

driving convictions. At oral argument, the parties focused on whether or not these convictions preclude a finding that Mr. Roberson exercised a good faith effort to repay his student loans, the final requirement for discharge. Having found that Mr. Roberson's temporary hardship precludes discharge, we leave this question for another day.

While drunk driving can cause one to veer off the path to prosperity into a ditch of destitution, Mr. Roberson fortunately has managed to avoid an irreparable harm that all too often is inflicted by this behavior— death or disability. Instead, he finds himself in financial straits, which the bankruptcy court concluded could be remedied by a two-year deferment of his student loans. If, upon the expiration of that deferment on December 11, 1993, Mr. Roberson's financial condition has not improved as anticipated, he may file a motion requesting the bankruptcy court reopen his case pursuant to Fed. R.Bankr.P. 4007(a) and (b).

The district court's decision discharging Mr. Roberson's student loans is REVERSED, and the case is REMANDED for the entry of judgment consistent with this opinion.