**EDUCATIONAL CREDIT MANAGE-MENT CORPORATION, Defendant–Appellant,**

v.

**Jodi ROSS, Plaintiff–Appellee.**

No. 00–C–0444–S.

United States District Court, W.D. Wisconsin.

Sept. 6, 2000.

Jeffrey W. Guettinger, Eau Claire, WI, for Educational Credit Management Corporation, plaintiff.

Allen F. Kenyon, Kenyon Law Office, Ladysmith, WI, for Ross, Jodi, defendant.

## MEMORANDUM AND ORDER

SHABAZ, Chief Judge.

Plaintiff Jodi Ross ("Ross") commenced this adversary action against defendant Educational Credit Management Corporation ("ECM") to discharge an educational loan in bankruptcy under 11 U.S.C. § 523(a)(8)(B). After a trial on May 15, 2000 Bankruptcy Court Judge Thomas S. Utschig found undue hardship and dis-

charged the debt. Defendant ECM appeals. Jurisdiction over the appeal is pursuant to 28 U.S.C. § 158(a)(1).

## BACKGROUND

Plaintiff Ross is a 29 year-old resident of Bruce, Wisconsin. She has no dependents and lives with her parents. In 1992 she graduated from Mount Scenario College in Ladysmith, Wisconsin with a bachelor's degree in business and accounting. That education was financed by the loan held by defendant. The parties have stipulated that plaintiff's outstanding debt is $13,665.82. She made several payments on the loan, but none since 1995.

Since graduation plaintiff Ross has held at least eight different jobs. She has worked as a loan officer and as a tax preparer for H & R Block. She has performed factory work and worked as a retail clerk. At the time of trial plaintiff worked part-time as a census taker. She also started her own accounting business, which to this point has a small volume of tax preparation work. Her tax records indicate that her 1999 income was approximately $5,500, which is the most she has earned in any year since graduating.

Plaintiff suffers from a variety of medical ailments. In January, 2000 she had surgery on her left knee. In April, 2000 her gallbladder was removed. Plaintiff also suffers from back problems and depression. Although she receives some form of subsidized health insurance plaintiff receives no other form of government assistance.

The Bankruptcy Court found that repaying the student loan would result in undue hardship for plaintiff. The Court found that plaintiff's income ranged between $1,000 and $5,000 since her 1992 graduation. Because of this plaintiff would be unable to maintain a minimal standard of living. The Court further found that plaintiff's health and mental problems constituted exceptional circumstances that made it likely that plaintiff's poor financial condition would persist. Finally, the Court held that plaintiff had made good faith efforts to repay the loan because she made initial payments, sought deferments and forebearances and tried to find work. The Court found that plaintiff had met her burden to prove undue hardship.

## MEMORANDUM

■ Title 11 U.S.C. § 523(a)(8)(B) permits the discharge of government guaranteed student loans where the failure to do so would impose "undue hardship on the debtor and the debtor's dependents." The "undue hardship" analysis in controlled by a three-prong analysis adopted in *In re Roberson*, 999 F.2d 1132 (7th Cir.1993). The debtor must show: (1) that based on current income and expenses he or she cannot maintain a "minimal" standard of living; (2) that additional circumstances exist indicating that the debtor's poor financial circumstances are likely to continue for a significant portion of the loan's repayment period; and (3) that the debtor made a good faith effort to repay the loan. *See Roberson*, 999 F.2d at 1135 (adopting *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987)).

■ The first prong considers whether payment of the loan would cause plaintiff's standard of living to fall below that which is minimally necessary given her current financial conditions. *See Roberson*, 999 F.2d at 1135. This requires an examination of the "debtor's current financial condition"—income and expenses. *See Roberson*, 999 F.2d at 1135. The Bankruptcy Court found that plaintiff clearly met this test because of her small income and her living arrangement with her parents.

The Bankruptcy Court, however, failed to assess plaintiff's full financial condition and incorrectly viewed plaintiff's living arrangement as an indication that plaintiff was unable to maintain a minimal standard of living. The living arrangement is properly viewed within the context of *Roberson* as the absence of a significant expense most debtors face. Although only temporarily employed at time of trial plaintiff's past tax records reveal that her income has risen almost every year since graduation with an income of over $5,500 in 1999. In contrast, plaintiff's expenses are nominal. She has no dependents or basic living expenses—she lives at home indefinitely with her parents with free room and board. The current economic reality facing plaintiff is that she has no expenses for room and board and there is no evidence that this arrangement will change in the future. This leaves plaintiff with more income for other expenses, including debt repayment. Plaintiff has no other outstanding debt, as $34,701 in credit card debt and $1,274 in medical expenses were discharged in bankruptcy. The expenses related to starting her accounting business have already been incurred. Her only apparent regular expenses appear to be liability auto insurance and subsidized health insurance. Plaintiff's living arrangement, absence of dependents and negligible expenses make it more than feasible for plaintiff to make payments on her loan while maintaining a minimal standard of living. There is no apparent alternate need for a significant portion of plaintiff's income, nor does the trial record show that plaintiff's expenses exceed her income.

 While failure to satisfy the first *Roberson* prong requires reversal this Court further disagrees that plaintiff has satisfied the second *Roberson* prong. Plaintiff is required to show additional circumstances exist making it likely that here

financial state is likely to continue for a significant portion of the loan repayment period. *See id.* In other words, there must exist "additional, exceptional circumstances, strongly suggestive of a continuing inability to repay over an extended period of time." *Id.* at 1136. The Bankruptcy court held that plaintiff's health and mental problems constituted such exceptional circumstances.

Plaintiff's financial problems are the direct result of her inability to find and keep a job. There is no evidence that plaintiff's health conditions are the cause of her unemployment. The Bankruptcy Court cited plaintiff's depression, but there was no evidence at trial that her mental condition had any effect on her ability to work. To the contrary, depression medication adequately addressed the problem. Plaintiff has suffered through a series of physical ailments. While she was unable to work through the physical stresses of factory work, the record shows that she has been able to work with little or no discomfort as a loan officer, a tax preparer and a retail clerk. With her education she is particularly suited for work that is compatible with her physical limitations.

Moreover, the Bankruptcy Court failed to find that the financial conditions resulting from her supposed inability to work were likely to persist for a "significant portion of the repayment period." The Bankruptcy Court found only that her "circumstances have persisted and are continuing to persist." (Tr. at 75–76). It went on to list the conditions from which plaintiff was currently suffering. However, *Roberson*'s second prong requires not a current inability to pay but a "continuing inability to pay over an extended period." *Roberson*, 999 F.2d at 1136. Despite plaintiff's testimony that she subjectively believes that her conditions are not improving there is no reason to conclude that

these conditions will continue during an "extended period of time." To the contrary, her medical records show that she is recovering. Four weeks after knee surgery her doctor noted that plaintiff was doing quite well and had even declined physical therapy. After gallbladder surgery in April plaintiff was described as "doing very well"; she required no pain medication and was told to refrain from heavy lifting only for two weeks. Plaintiff canceled all physical therapy appointments for her back ailment and has not arranged resumption. The records show these physical ailments to be lessening. Consequently, assuming these ailments affected her ability to work there is no evidence that they would do so for a significant portion of the repayment period.

The Court concludes that the Bankruptcy Court erred when it found undue hardship. With plaintiff's education in business and accounting she has marketable skills. There are no exceptional obstacles to employing those skills in what is typically a sedentary yet flexible work setting. Further, outside her area of specialization numerous options exist within her apparent limitations. She has resorted to those options in the past and may have to do so again.

### ORDER

IT IS ORDERED that the Bankruptcy Court is REVERSED; the educational loan held by defendant ECM is not discharged under 11 U.S.C. § 523(a)(8)(B).