**In re Thomas HOCKETT and Linda Hockett, Debtors.**

**Thomas Hockett, Plaintiff,**

v.

**Educational Credit Management Corp., Defendant.**

**Bankruptcy No. 01–83565.**
**Adversary No. 01–8300.**

United States Bankruptcy Court,
C.D. Illinois.

Jan. 22, 2003.

---

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court is the adversary complaint filed by Thomas Hockett individually, ("THOMAS"), who, with his wife, Linda Hockett, are the Chapter 7 Debtors (together, the "DEBTORS"), against Educational Credit Management Corp. (ECMC), to determine whether his student loan obligation is dischargeable under Section 523(a)(8) as an undue hardship. The Court took the matter under advisement after trial at which THOMAS was the only witness.

## FACTUAL BACKGROUND

THOMAS is forty-six years old and his wife is forty-eight years old. Together they are the legal guardians of their sixteen year old grandchild. They have no other dependents. Fifteen years ago, THOMAS enrolled in a six-week truck driving course, borrowing $4,600.00.[1] The loan was payable over a five year period. Upon graduation, he obtained employment as a truck driver and began making weekly payments of $50.00 on the student loan. While out on the road, his stepdaughter was fatally injured in an automobile accident. THOMAS immediately went home and did not return to his job. The difficulties and frustrations of being on the road away from home and the absence of a family life contributed to his decision to abandon truck driving as an occupation. His commercial driver's license expired and has never been renewed.

During the next ten years, he worked in various restaurants as a cook, never earning more than $7.00 per hour. Approxi-

James S. Brannon, Peoria, IL, for Debtors.

Gary T. Rafool, Peoria, IL, trustee.

---

1. Although the loan documents are not part of the record, THOMAS admits that the loan was "made, insured or guaranteed by a governmental unit" subject to the provisions of Section 523(a)(8).

mately three years ago, he obtained a position running the blaster at a gas meter plant, through a temporary services agency. Except for a brief period of time when he was laid off, during which time he worked for a recycling center, his employment at the plant has been continuous.

In October of 1998, the DEBTORS purchased a residence, obtaining a purchase money loan which also consolidated their automobile loan and included additional funds used to make a direct payment to the holder of the student loan to "catch up" the loan.[2] In addition to receiving that payment, the holder of the student loan garnished several years' income tax refunds. The DEBTORS had no records showing those amounts, however.[3] No other payments have been made on the student loan.

On August 20, 2001, the DEBTORS filed a joint Chapter 7 petition. At the time the petition was filed, a foreclosure suit was pending against them, and the mortgagee was granted relief from the stay to continue those proceedings. In addition to household goods and personal effects of minimal value, the DEBTORS owned a 1996 Chevy Corsica with 103,000 miles, valued at $2,000.00 and had less than $500.00 in cash and in their bank account. The DEBTORS have since purchased, on credit, a 1998 Oldsmobile Achieva, purchased used in July, 2002, and a 2000 Ford Escort.

THOMAS brought this action seeking a determination that his student loan, having a balance of $7,847.00 at the time the bankruptcy was filed, is dischargeable under Section 523(a)(8) as an undue hardship. THOMAS testified to monthly family expenses including rent of $262.00; utilities of $115.00; telephone of $85.00; food of $400.00; clothing of $100.00 to $150.00; transportation expenses of $125.00 to $150.00; musical instrument rental of $60.00; school expenses of $100.00; automobile insurance of $154.00; car payments of $183.00 on the Oldsmobile and $254.00 on the Ford; and payments of $150.00 on two personal post-petition loans. Neither THOMAS nor his wife have medical insurance, and at the time of the bankruptcy their medical and dental expenses were estimated at $100.00 per month.

THOMAS earns $6.00 per hour. His spouse, a certified nurse's aid, earns $10.22 per hour. In addition, the DEBTORS receive $100.00 per month in assistance for their grandson. According to Schedule I filed with the bankruptcy petition, THOMAS' net monthly income is $887.00 and his spouse's net monthly income is $1,455.00, for a combined net monthly income of $2,342.00.[4] As a temporary employee, THOMAS does not receive any compensation when his workplace is shut down for a two-week vacation period each year.

### ANALYSIS

Under Section 523(a)(8), a student loan is not dischargeable in bankruptcy unless "excepting such debt from discharge ... will impose an undue hardship

---

2. According to the motion for relief from the stay filed by the mortgagee, the balance due on the mortgage as of the date of bankruptcy was $33,173.29. The DEBTORS valued their residence at $10,000. The DEBTORS were seven months behind in payments when the motion for stay relief was filed in October, 2001.

3. A payment history was not introduced into evidence. Nothing in the record indicated whether or not THOMAS ever requested that ECMC produce a payment history.

4. At trial, THOMAS did not testify as to this amount, but the DEBTORS' employers remain the same and, based on the hourly wages testified to by him, the Court finds that their current net monthly income is the same as disclosed on Schedule I filed with their bankruptcy petition.

on the debtor and the debtor's dependents." While the term "undue hardship" is not defined in the Bankruptcy Code, the Seventh Circuit has embraced the Second Circuit's three-part *Brunner* test, which requires the debtor to demonstrate by a preponderance of the evidence:

1. That the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans;

2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3. That the debtor has made good faith efforts to repay the loans.

*Matter of Roberson*, 999 F.2d 1132 (7th Cir.1993)(adopting the three-part test set by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987), the *"Brunner* test"). Because the debtor is required to establish all elements of the test, if the debtor fails to establish any one of the three, the court need not continue with the inquiry. *Roberson*, 999 F.2d at 1135.

**Current Inability to Repay.**

■ Under the first prong, the DEBTOR must show that he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if he is forced to repay the student loan. In making this analysis, the Court must first evaluate the DEBTOR'S present standard of living based upon his particular circumstances and actual living expenses which appear from the record and then determine whether the forced

repayment of the student loan obligation will preclude the DEBTOR from maintaining a minimal standard of living. *In re Barron*, 264 B.R. 833 (Bankr.E.D.Tex. 2001).

■ The DEBTORS' combined net monthly income is $2,342.00. THOMAS testified to monthly expenses for his family ranging from $1,988.00 to $2,063.00, to which this Court will add the estimated medical expenses shown on the bankruptcy Schedule J of $100.00. Using the high end of the range of expenses testified to by THOMAS, the Court finds that the family expenses are currently $2,163.00 per month.[5] Subtracting the DEBTORS' monthly expenses from their net monthly income yields a difference of $179.00, representing disposable income available to pay the student loan. When the student loan balance of $7,847.00 is amortized at 9% interest over five years, the level monthly payment is $163.00; over ten years, the payment amount is 100.00 per month.

As admitted by ECMC, the DEBTORS live a very frugal lifestyle. They live in a rented mobile home. When the DEBTORS filed their petition, they owned and resided in their own home in Toulon, Illinois, which has since been lost through foreclosure. Neither DEBTOR is covered by health insurance.[6] Their living expenses account for only the barest of necessities. In addition to the two automobile loans, the DEBTORS incurred $1,440.00 in unsecured debt after their filing which tends to indicate that they are lapsing back into the same debt-trap that their bankruptcy was designed to remedy.

The DEBTORS' lifestyle is truly minimal, but that is all that is permitted by the

5. Schedule J filed by the DEBTORS with their petition, lists monthly expenses of only $1,473.00, and appears to have been incomplete.

6. THOMAS expressed no intent to purchase health insurance and introduced no evidence of what such insurance would cost.

first prong of the *Brunner* test. Even though some of the evidence casts doubt upon THOMAS' ability to pay the fifteen year old student loan debt, the most probative evidence with respect to the first prong of the *Brunner* test is the disposable income calculation derived directly from THOMAS' testimony as to his current family income and expenses. Based on the evidence in the record, the Court finds that THOMAS has the present ability to make reasonable monthly payments on the loan while still maintaining a minimal standard of living for himself and his dependents.

Accordingly, the Court finds that THOMAS has failed to carry his burden to prove the first prong of the *Brunner* test. The analysis stops there. Judgment will be entered in favor of ECMC, determining that the student loan is nondischargeable.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.