**In the Matter of George F. KEHLER, Debtor.**

**George F. Kehler, Plaintiff,**

**v.**

**Nelnet Loan Services, Department of Education, United States Attorney, and Educational Credit Management Corporation, Defendants.**

Bankruptcy No. 04–33672.
Adversary No. 04–3113.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

June 1, 2005.

Patrick J. Roberts, Peru, IN, for plaintiff, Roberts Law Firm.

Stacia L. Yoon, Merrillville, IN, for defendant Educational Credit Management Corporation, Kopko, Genetos & Retson, LLP.

**1.** The court granted ECMC's Motion to Substitute Party and joined ECMC with the original defendants on October 6, 2004.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Chief Bankruptcy Judge.

At South Bend, Indiana, on June 1, 2005.

Before the court is the Complaint to Determine Dischargeability pursuant to 11 U.S.C. § 523(a)(8), filed by plaintiff George F. Kehler ("plaintiff" or "debtor") on August 31, 2004. The defendant Educational Credit Management Corporation ("ECMC") filed its answer on October 7, 2004.[1] Trial on the complaint was held on May 18, 2005. For the reasons that follow, the court now denies the debtor's Complaint.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200.1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(I) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

### Background

The debtor, George Francis Kehler, filed his chapter 7 bankruptcy petition on July

6, 2004, and then commenced this adversary proceeding on August 31, 2004, seeking a discharge of his student loans because the debt imposed upon him an undue hardship pursuant to 11 U.S.C. § 523(a)(8). The debtor has four loans, which he executed consecutively from 1986 until 1989, in order to finance his education at the Northern Baptist Theological Seminary in Lombard, Illinois. At the time of his complaint, the debtor owed $61,995.83. However, his loans have been in forbearance since 1992. In his complaint the debtor claimed he could not make payments on his debt because of his low income, which was unlikely to improve due to his age, poor physical condition and the lack of ministries near his home. The debtor also claimed that he had made good faith attempts to repay his loans. Defendant ECMC joined with the initial defendant, Nelnet, on October 6, 2004. ECMC then filed its answer on October 7, 2004, denying all allegations in the complaint concerning the debtor's claim of undue hardship.

The debtor, 62 year-old George Francis Kehler, was the only witness at trial on the complaint. He lives alone in a mobile home in Peru, Indiana and is unmarried with no dependents, although he cares for his ailing parents, who reside near him and tie him to the area. Since 2003 the debtor has been employed part-time as an ordained minister at the Goodland First Baptist Church ("Goodland"), where his duties include writing sermons, attending all board meetings held by trustees or deacons of the church, conducting Wednesday bible study classes and making visitations to members of his congregation.

The debtor has severe arthritis in his knee and walks with a cane. His doctor suggested to him that he undergo microscopic surgery on his knee, but he has not been able to afford it. The debtor also injured his back in 1982, while lifting an air conditioning unit, and subsequently lost his job at Chrysler, where he had worked for fifteen years. He receives a disability pension from Chrysler, but he is not permanently disabled and receives no disability aid from the government. Since his graduation from the seminary in 1990, his only employment has been as a minister. He has held two positions prior to his job at Goodland. His first position was as a student pastor. He held a second position at the First Baptist Church in Winchester, which he left in order to care for his parents.

The debtor listed three sources of income: (1) his salary from Goodland, (2) his Chrysler pension plan, and (3) social security. There were differences between the debtor's income as reported in his bankruptcy schedules (filed July 6, 2004) and the debtor's trial testimony on May 18, 2005. The total combined monthly income reported on Schedule I was $2,114.52. The debtor testified that his monthly income now is $2,484.70, and counsel for both parties agreed upon this amount. There were also discrepancies between the bankruptcy schedules and Plaintiff's Exhibit 2, a document admitted at the hearing. First, the debtor's Schedule B listed a timeshare property in a Colorado resort that the debtor had purchased in 1992; he made monthly payments of $120.13 and upgraded it in 1993, increasing his monthly payments to $208.00. Plaintiff's Exhibit 2 made no mention of the timeshare, and the debtor explained that he no longer held the property. Second, Schedule B itemized only one car, the 2000 Pontiac Bonneville with 149,000 miles on it. However, Plaintiff's Exhibit 2 listed a second vehicle, a 2005 Dodge Caravan, which is leased for $5,532.12. The debtor stated that he had leased the Caravan after filing his bankruptcy petition in order to drive his parents to their medical appointments.

The debtor's expenses also changed between the time of petition and the trial. His monthly expenses according to Schedule J were $2,035.30. Schedule J listed the following payments per month:

| | | |
|---|---|---|
| Rent | $ | 170.00 |
| Electric and heating | $ | 80.00 |
| Telephone | $ | 23.28 |
| Cable | $ | 57.22 |
| Internet | $ | 21.95 |
| Food | $ | 275.00 |
| Clothing | $ | 50.00 |
| Laundry and dry cleaning | $ | 25.00 |
| Medical | $ | 45.00 |
| Transportation | $ | 275.00 |
| Charitable contributions (tithing) | $ | 270.00 |
| Auto insurance | $ | 52.85 |
| Life insurance | $ | 60.00 |
| Homeowner's insurance | $ | 30.00 |
| Car payments | $ | 200.00 |
| Payments on his mobile home | $ | 300.00 |
| Books | $ | 100.00 |
| | | |
| Total per month | $ | 2,035.30 |

However, in Plaintiff's Exhibit 2, the debtor reported that his monthly expenses were $2,878.29. The higher Plaintiff's Exhibit 2 total is attributable to the debtor's larger heating and electric bill ($125.00), higher transportation costs ($1,092.53), and greater tithing to his church ($364.00). The debtor explained each change: His heating costs on Schedule J had been an estimate, whereas his costs as reported in Plaintiff's Exhibit 2 were an accurate monthly average; his car payments had increased because of the high cost of gas; and he tithed more money because his income had increased, allowing him to contribute more to his church.

The debtor expressed his fear that, despite his modest expenses, his circumstances would render him unable to repay his student loans should they not continue in forbearance. He admitted in his testimony that he had looked at the letter ECMC had sent to him detailing a repayment plan for which he qualified under the William D. Ford Consolidation Program. However, he wanted to wait until after the court issued its judgment in this adversary proceeding before taking the program further into consideration.

In closing arguments, the debtor's attorney argued that there was nothing more that the debtor could do to free himself from debt. If he should try to earn more money, the government would reduce his social security benefits. The ECMC attorney disagreed, asserting that the debtor failed all three prongs of the § 523(a)(8) test set forth in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam), and could show no evidence of undue hardship. Furthermore, ECMC argued that the Ford Program would enable the debtor to pay back his loans while maintaining most of his expenses, including his tithing and his Dodge Caravan. At the end of the trial, the court took the Complaint under advisement.

### Discussion

Under 11 U.S.C. § 523(a)(8), student loans are not dischargeable unless the debtor can show that a repayment of those debts would impose an undue hardship on the debtor and the debtor's dependents. Section 523(a)(8) provides:

(a) A discharge ... does not discharge an individual debtor from any debt— (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The Bankruptcy Code does not define "undue hardship," but the relevant case law shows that the Seventh Circuit

Court of Appeals has adopted the three-part test set forth by the Second Circuit in *Brunner, supra,* in order to determine when undue hardship would occur. The test requires:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

> (3) that the debtor has made good faith efforts to repay the loans.

*In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993) (quoting *Brunner,* 831 F.2d at 396). The heightened standard required by the *Roberson/Brunner* test is meant to ensure adherence to congressional intent by making student loans funded by the public more difficult to discharge than other nonexcepted debt. *See Brunner,* 831 F.2d at 396. Therefore, the appellate court places the burden on the debtor to establish all three of the *Roberson* elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that the "standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard").

■ The court first considers whether the debtor has shown that he cannot maintain a "minimal standard of living" for himself if he is required to repay his debts. To make that determination, the court ex-amines the debtor's present financial condition and evaluates whether his payment of the student loans "'would cause his standard of living to fall below that minimally necessary.'" *O'Hearn v. ECMC (In re O'Hearn),* 339 F.3d 559, 564 (7th Cir. 2003) (quoting *Roberson,* 999 F.2d at 1135). The first prong of *Roberson* does not require the debtor to live at or below poverty level in order to repay the loan. *See Shirzadi v. U.S.A. Group Loan Servs. (In re Shirzadi),* 269 B.R. 664, 668 (Bankr. S.D.Ind.2001). Nevertheless, the debtor cannot succeed under this prong by demonstrating that the repayment of the student loans would require him to make major personal and financial sacrifices and to live within a restricted budget. "The first prong of the *Brunner* analysis requires more than a showing of tight finances." *Pennsylvania Higher Educ. Assistance Agency v. Faish,* 72 F.3d 298, 306 (3d Cir.1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

■ The debtor contended that he would not be able to maintain a minimal standard of living and that, should he attempt to pay his student loans, he could do nothing more, as he put it at the hearing, than "eat, sleep, pay his electric bills and [go] back and forth to Goodland." The debtor testified that his monthly income is $2,484.70 and that his monthly expenses are $2,878.29, leaving him with a monthly deficit of $393.59. The largest expense he listed was his transportation costs.[2] The court, which is well aware of the rising cost of gasoline over the past months, nevertheless finds it difficult to believe that the debtor's driving costs increased four-fold

---

**2.** The debtor's second largest monthly expense is his tithing to the church. Although the parties discussed at the hearing the reasonableness of this charitable contribution expense and the court reviewed the ways in which a monthly tithe has been evaluated in a § 523(a)(8) context, *see, e.g., In re Fulbright,* 319 B.R. 650, 657–60 (Bankr.D.Mont.2005), it finds that a determination of the debtor's ability to satisfy the first prong of the *Roberson* test can be made by examining his other expenses.

in eleven months, from $275.00 to $1,092.53. The court notes that the debtor's position at Goodland First Baptist Church has not changed, that he receives $180.00 from the church each month for his transportation, and that the cost of gasoline has not quadrupled. It therefore finds that the debtor's testimony and evidence of the $800.00 increase in his transportation costs are exaggerated and not credible.

The court recognizes that the debtor has little personal property and that he commutes a long distance to his place of employment. Nevertheless, his leased second vehicle and his monthly $100.00 expenditure on books, while in a chapter 7 bankruptcy, are chosen expenses that suggest a lifestyle even beyond that of a minimal standard of living. The evidence in the record does not show that the debtor cannot maintain a minimal standard of living for himself if he is required to repay the student loans. Based on the evidence, the court determines that the debtor can pay back his student loan debt, in the affordable increments set forth by ECMC at the hearing, and still maintain at least a minimal standard of living based on his current income and expenses. The debtor qualifies for the income dependent repayment program under the William D. Ford Federal Direct Loan Program. *See* 34 C.F.R. § 685.200 ff. According to ECMC's attorney, this program would allow him to make monthly payments of $87.97 for twenty five years, and have the remainder of his debt cancelled thereafter. The court determines that the debtor has failed to show that the repayment of his student loans under such a program would cause his standard of living to become less than minimal.

Because the debtor failed his burden of proof under the first prong, it is unnecessary for the court to address the other prongs of the *Roberson* test. *See Goulet v. ECMC*, 284 F.3d 773, 777 (7th Cir.2002) ("If the debtor fails to establish any one of the elements, the test has not been met and the court need not continue with the inquiry.") However, in light of the parties' arguments at the hearing, the court will turn briefly to the other two prongs. It examines whether the debtor has shown, under the second element, that additional circumstances exist which indicate that the debtor's state of affairs is likely to continue for a significant portion of the repayment period. Such circumstances must evince "a certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Roberson*, 999 F.2d at 1136. The debtor contends that he cannot attempt to do more work because his social security benefits will decrease if his income increases. He also points out that his age and physical condition are impediments to finding better work. He adds that he moved to his present location by choice, leaving a higher-paying job so that he could care for his aging parents. However, a low-paying job, however worthwhile and socially beneficial it may be, does not entitle a debtor to a discharge of his debts for undue hardship. *See, e.g., In re O'Hearn*, 339 F.3d at 566 (noting that "Congress has not provided that such considerations [as the social usefulness of a job] ought to be weighed in determining the discharge of student loans"); *see also Oyler v. ECMC*, 397 F.3d 382, 385 (6th Cir.2004) ("Choosing a low-paying job cannot merit undue hardship relief."). Here the debtor, after graduating from a seminary and obtaining a position as an ordained minister, chose to leave that church and move to a part-time position. He has not attempted to maximize his income by finding the better-paying work for which he is qualified. Nor has he presented evidence that his current inability to pay his student loan debt will contin-

ue for an extended period in the future. The court notes that, despite his age and the arthritis in his knee, the debtor has by his own testimony stated that he is able and willing to work. The court determines that the debtor has failed to show by a preponderance of the evidence that additional circumstances exist indicating that his state of affairs is likely to continue for a significant portion of the repayment period.

The court considers whether, under the third prong of the *Roberson* test, the debtor has made good faith efforts to repay his loans. The debtor testified that he made attempts to pay back his loans until 1992, when they were put on forbearance. Since then, the debtor has not made any attempts to reduce his student loan debt. He did, however, find the funds to purchase a timeshare property in 1992 and to upgrade it in 1993. He paid $208.00 per month for it, rather than paying his student loan debt, from 1993 through his bankruptcy filing in July 2004. Since filing bankruptcy, the debtor has used his income for the discretionary purpose of leasing a new Dodge Caravan. Furthermore, the debtor has not fully examined his repayment options under the William D. Ford Federal Direct Loan Program. Not exploring the available repayment options can be a sign that a debtor has not made an effort in good faith to repay his debts. *See, e.g., In re Thoms,* 257 B.R. 144, 149–50 (Bankr.S.D.N.Y.2001) (noting that the debtor had demonstrated the absence of a good faith effort to repay her loans, not only through ceasing her attempts to repay the loans after graduation but also by not availing herself of the repayment opportunities provided by ECMC). Therefore, the court determines that the debtor has failed to show that he made good faith efforts to repay his loan.

The court is aware that the debtor lives frugally in a mobile home and works to support himself. It is cognizant of his devotion to his family, church and congregation. The court believes that the debtor can fulfill his repayment obligations by following the William D. Ford Federal Direct Loan Program with the same dedication he employs in fulfilling his obligations elsewhere. Nevertheless, the court finds from the evidence in the record that the debtor has not carried his burden of proof on any one of the three prongs of the *Roberson* test. He therefore has not established that he will suffer an *undue* hardship if required to repay the student loans. Accordingly, the court determines that the student loan obligations are not discharged in the debtor's bankruptcy.

### Conclusion

For the reasons presented above, the court finds that the debtor George Francis Kehler has failed to demonstrate, by a preponderance of the evidence, that the repayment of his student loans would impose an undue hardship on him. He thus has not met his burden of proving that he is entitled to a discharge of those debts pursuant to 11 U.S.C. § 523(a)(8). The court finds, therefore, that the student loan debts are excepted from the debtor's discharge.

The court denies the debtor's Complaint to Discharge Student Loan.

SO ORDERED.