In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3592

SUSAN M. KRIEGER,

*Plaintiff-Appellant*,

*v.*

EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-1164—**Joe Billy McDade**, *Judge*.

SUBMITTED MARCH 15, 2013—DECIDED APRIL 10, 2013

Before EASTERBROOK, *Chief Judge*, and MANION and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Susan Krieger is destitute. Her entitlement to a discharge in bankruptcy is unquestioned. But her largest creditor—Educational Credit Management, which acts on behalf of some federal loan guarantors—asked the bankruptcy judge to exempt her student loans from the discharge, relying on 11 U.S.C. §523(a)(8). This subsection excludes educational loans

"unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor". We have understood this language this way:

> "Undue hardship" requires a three-part showing (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993), quoting from *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (bracketed changes made by *Roberson*).

A bankruptcy judge concluded, following a trial, that this standard has been met. 2012 Bankr. LEXIS 1449 (Bankr. C.D. Ill. Apr. 5, 2012). The evidence shows that Krieger cannot pay the debt now or in the foreseeable future. She is living with her mother, age 75, in a rural community where few jobs are available; mother and daughter between them have only a few hundred dollars (from governmental programs) every month. She is too poor to move in search of better employment prospects elsewhere, and her car, which is more than a decade old, needs repairs. She lacks Internet access, which coupled with the lack of transportation hampers a search for work.

Educational Credit conceded that part (1) of this circuit's standard has been met but argued that parts (2) and (3) have not been. Its argument was based on what it characterized as Krieger's failure to search harder for work (she has made "only" 200 or so applications during the past decade) and to accept work at jobs other than the ones for which her training best suits her (the educational debts were incurred to obtain training as a paralegal, and most of Krieger's searching has been for paralegal jobs). The bankruptcy judge concluded, however, that Krieger had made a thorough effort. Educational Credit does not contend that she has the resources to sustain herself during a wider geographical search. And the bankruptcy judge observed that Krieger's good faith is demonstrated not only by her decade-long search but also her decision to use a substantial chunk of a divorce settlement to pay off as much of the educational loan as she could. (The amount remaining is about $25,000.)

A district judge reversed and held that the educational debt cannot be discharged. 482 B.R. 238 (C.D. Ill. 2012). The district judge thought that Krieger could have searched harder for work, especially in recent years (when, she conceded, her applications had tapered off in light of the failure of the many earlier applications). And the judge also thought that Krieger fails the good-faith standard, because she had not enrolled in a program that would have offered her a 25-year payment schedule. The judge allowed that Krieger could not pay even $1 a year as now situated but thought that accepting a deferred payment schedule would have

shown good faith by committing to pay some of the debt should she become employed in the future.

We start with that part of the analysis. The district judge did not doubt that Krieger has paid as much as she could during the 11 years since receiving the educational loans. Instead the judge concluded that good faith entails commitment to future efforts to repay. Yet, if this is so, no educational loan *ever* could be discharged, because it is always possible to pay in the future should prospects improve. Section 523(a)(8) does not forbid discharge, however; an unpaid educational loan is not treated the same as a debt incurred through crime or fraud. The statutory language is that a discharge is possible when payment would cause an "undue hardship". It is important not to allow judicial glosses, such as the language in *Roberson* and *Brunner*, to supersede the statute itself.

The bankruptcy judge found that Krieger has acted in good faith. That standard combines a state of mind (a fact) with a legal characterization (a mixed question of law and fact). Findings of fact must stand unless clearly erroneous, and cases such as *Pullman-Standard v. Swint*, 456 U.S. 273 (1982), and *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986), show that mixed questions likewise are treated as factual in nature. We appreciate the possibility that, when the only real dispute is legal, the resolution of a mixed question may be a legal one, open to plenary appellate resolution. We have said that about some disputes under §523(a)(8). See *Goulet v. Educational Credit Management Corp.*, 284 F.3d 773,

777 (7th Cir. 2002); *Roberson*, 999 F.2d at 1137. Once again, however, we must remember that the statutory inquiry is "undue hardship," a case-specific, fact-dominated standard, which implies deferential appellate review. See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *Mucha v. King*, 792 F.2d 602 (7th Cir. 1986). To the extent that the district judge thought that debtors *always* must agree to a payment plan and forgo a discharge, that is a proposition of law—an incorrect proposition, for the reasons we have given. What remains is a predominantly factual understanding, on which the bankruptcy judge's findings must prevail. (Educational Credit does not contend, and the district judge did not hold, that any is clearly erroneous.)

As for the second part of the *Roberson* standard: The bankruptcy judge found that Krieger's straightened circumstances are likely to persist indefinitely. This is a factual finding and not clearly erroneous. Krieger lives in a rural area with few jobs. She lacks the resources to travel in search of employment elsewhere. Educational Credit contends that she could and should accept jobs that pay less than a paralegal position, but the bankruptcy judge found that she had applied without success and that "[n]ever has the Court seen such utter futility be the result of a debtor's job search efforts." 2012 U.S. Bankr. LEXIS 1449 at *16. She is 53 years old and has not held a job since 1986, when she left the work force to raise a family. She did not earn more than $12,000 a year in her working career (between 1978 and 1986). That's not the sort of background employers are looking for. There is no reason to think that a brighter

future is in store; indeed, both the district judge and Educational Credit concede that the result of a 25-year payment plan probably would be no payments, with interest accumulating, followed by forgiveness when Krieger reaches age 78 (forgiveness of the unpaid balance is one inducement to accept a deferred-payment plan).

Finally, although there has been no contest about the first part of the *Roberson* standard, it is worth recollecting that Educational Credit concedes (as the bankruptcy judge found) that Krieger simply *cannot* pay. She is essentially out of the money economy and living a rural, subsistence life. She does not have assets or income and, the bankruptcy judge found, is not likely to acquire any.

In *Roberson* we boiled the three criteria down to "certainty of hopelessness". 999 F.2d at 1136. That sounds more restrictive than the statutory "undue hardship," but at all events the bankruptcy judge found that Krieger's situation is hopeless. That may be unduly pessimistic, but a judge asked to apply a multi-factor standard interpreting an open-ended statute necessarily has latitude; the more vague the standard, the harder it is to find error in its application. The ultimate finding of "undue hardship" is neither clearly erroneous nor an abuse of discretion. The judgment of the district judge is reversed, and the case is remanded with instructions to reinstate the discharge issued by the bankruptcy judge.

MANION, *Circuit Judge*, concurring. The bankruptcy judge, after observing that debtor Susan Krieger had engaged in what he described as an extraordinarily persistent job search for over a decade, concluded that "[n]ever has the Court seen such utter futility be the result of a debtor's job search efforts. [She] is truly destitute and has been in these straits for many years without any respite." In a well-reasoned opinion, the district court disagreed. Although I prefer the district court's analysis, I recognize that our standard of review requires that in order to reverse we must determine that the bankruptcy judge's key findings of fact were clearly erroneous. I accept this court's conclusion that with a mixed determination of law and fact, we still must follow the clearly erroneous approach. Therefore I concur with the court's order.

As it is presented, this case is truly an exception. But Ms. Krieger is fifty-three years old and is in good health. She resides with her seventy-five-year-old mother on a small rural farm. She has given up looking for a job, a search which she concludes is an effort in futility. Under normal circumstances that should not happen. She is healthy and well-educated. In 1999, Krieger received an Associate of Arts degree in Business Accounting from St. Charles Community College. In 2000, she enrolled at Webster University in Webster Groves, Missouri, where she earned a paralegal certificate and graduated with a Bachelor of Arts in Legal Studies. She had a high GPA and she received significant recognition for her academic achievements. She clearly received the education that she borrowed for. Yet as a

result of years of non-payment, her remaining $17,000 student-loan debt has grown to approximately $25,000 with interest.[1]

The bankruptcy court was impressed by her diligent efforts to obtain a job. As the court notes, she applied for about 200 jobs over a ten-year period. Over a ten-year period that averages out to less than two applications per month, but presumably she funneled all of those applications into an earlier part of the decade before she dropped out of the work force and moved in with her mother.

Unfortunately, she is not in a class by herself. Recently the Chicago Tribune cited an Equifax National Consumer Credit Trends Report finding that "banks wrote off $3 billion of student loan debt in the first two months of 2013, up more than 36% from the year-ago period." Elvina Nawaguna, *Student loan write-offs hit $3 billion in first two months of year*, Chi. Trib., Mar. 25, 2013.[2] One would hope that these defaults were for better reasons than those presented by Ms. Krieger. But although applicants for federal student aid generally must demon-

---

[1] The five separate student loans she originally received totaled $25,416 in principal, but with proceeds of a divorce settlement and other minor sources of income, she repaid several thousand dollars.

[2] http://articles.chicagotribune.com/2013-03-25/business/ sns-rt-us-usa-studentloans-delinquencybre92o11k-20130325_1_ student-loan-loan-write-offs-offer-more-flexible-repayment (last visited on Apr. 5, 2013)

strate "financial need," applicants need not show that they will be capable of repaying the student-loan debts they incur. *See* Federal Student Aid, *Basic Eligibility Criteria*.[3] Moreover, outstanding student loan debt in the United States is approaching $1 trillion. *See* FRBNY Research and Statistics Group, *Quarterly Report on House-hold Debt and Credit* 1 (Feb. 2013). It is obvious that a crisis is at hand. Ms. Krieger's successful petition for a discharge of her $25,000 obligation should be labeled as an extreme exception and an outlier. But with many people struggling to make payments on their loans, will they see in this case and perhaps others like it an excuse to avoid their own student-loan obligations?

A good and expensive education is no longer a guarantee that a good job will ensue. The Wall Street Journal recently featured an article headlined, "College Grads May Be Stuck in Low-Skill Jobs." Ben Casselman, Wall St. J., Mar. 26, 2013, at A5. While college tuition continues to rise, job opportunities appear to be con-tracting. Hope remains that an eventually improving economy will generate more job opportunities. But for those who perceive that their employment-seeking efforts are at a dead end, bankruptcy should not be the answer. Rather than challenging the non-dis-chargeability barrier in bankruptcy, those who have concluded that there is no way they can pay off the debt should be required to enroll in the William D.

---

[3] http://www.studentaid.ed.gov/eligibility/basic-criteria (last visited on Apr. 5, 2013)

Ford Income-Based Repayment Plan. Under that plan, a borrower's monthly payment is limited to 15% of discretionary income (defined as any income above 150% of the poverty line). In Ms. Krieger's case, she would have owed zero dollars unless she received an annual income of something approaching $17,000. And after twenty-five years under the IBR program, any remaining debt is forgiven.[4] This may sound like an unattractive alternative, but as the district court noted, this is certainly better than erasing what should be an undischargeable debt given Ms. Krieger's age, good health, and solid education.

---

[4] Although the court treats this repayment program as only addressing Ms. Krieger's *future* ability to repay her student loans, the program was available to her well before she filed her bankruptcy petition. Ms. Krieger's failure to inquire about and take advantage of this program *before* filing for bankruptcy is "evidence of a less than good faith effort to repay [her] student loan debts." *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 782 (8th Cir. 2009).