EASTERBROOK, Chief Judge.
Susan Krieger is destitute. Her entitlement to a discharge in bankruptcy is unquestioned. But her largest creditor — Educational Credit Management, which acts on behalf of some federal loan guarantors — asked the bankruptcy judge to exempt her student loans from the discharge, relying on 11 U.S.C. § 523(a)(8). This subsection excludes educational loans “unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor”. We have understood this language this way:
“Undue hardship” requires a three-part showing (1) that the debtor cannot maintain, based on current income and expenses, a “minimal” standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.
In re Roberson, 999 F.2d 1132, 1135 (7th Cir.1993), quoting from Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2d Cir.1987) (bracketed changes made by Roberson).
A bankruptcy judge concluded, following a trial, that this standard has been met. 2012 WL 1155687, 2012 Bankr.Lexis 1449 (Bankr.C.D.Ill. Apr. 5, 2012). The evidence shows that Krieger cannot pay the debt now or in the foreseeable future. She is living with her mother, age 75, in a rural community where few jobs are available; mother and daughter between them have only a few hundred dollars (from governmental programs) every month. She is too poor to move in search of better employment prospects elsewhere, and her car, which is more than a decade old, needs repairs. She lacks Internet access, which coupled with the lack of transportation hampers a search for work.
Educational Credit conceded that part (1) of this circuit’s standard has been met but argued that parts (2) and (3) have not been. Its argument was based on what it characterized as Krieger’s failure to search harder for work (she has made “only” 200 or so applications during the past decade) and to accept work at jobs other than the ones for which her training best suits her (the educational debts were incurred to obtain training as a paralegal, and most of Krieger’s searching has been for paralegal jobs). The bankruptcy judge concluded, however, that Krieger had made a thorough effort. Educational Credit does not contend that she has the resources to sustain herself during a wider geographical search. And the bankruptcy judge observed that Krieger’s good faith is demonstrated not only by her decade-long search but also her decision to use a substantial chunk of a divorce settlement to pay off as much of the educational loan as she could. (The amount remaining is about $25,000.)
A district judge reversed and held that the educational debt cannot be discharged. 482 B.R. 238 (C.D.Ill.2012). The district judge thought that Krieger could have searched harder for work, especially in recent years (when, she conceded, her applications had tapered off in light of the failure of the many earlier applications). And the judge also thought that Krieger fails the good-faith standard, because she had not enrolled in a program that would have offered her a 25-year payment sched *884 ule. The judge allowed that Krieger could not pay even $1 a year as now situated but thought that accepting a deferred payment schedule would have shown good faith by committing to pay some of the debt should she become employed in the future.
We start with that part of the analysis. The district judge did not doubt that Krieger has paid as much as she could during the 11 years since receiving the educational loans. Instead the judge concluded that good faith entails commitment to future efforts to repay. Yet, if this is so, no educational loan ever could be discharged, because it is always possible to pay in the future should prospects improve. Section 523(a)(8) does not' forbid discharge, however; an unpaid educational loan is not treated the same as a debt incurred through crime or fraud. The statutory language is that a discharge is possible when payment would cause an “undue hardship”. It is important not to allow judicial glosses, such as the language in Roberson and Brunner, to supersede the statute itself.
The bankruptcy judge found that Krieger has acted in good faith. That standard combines a state of mind (a fact) with a legal characterization (a mixed question of law and fact). Findings of fact must stand unless clearly erroneous, and cases such as Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), and Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986), show that mixed questions likewise are treated as factual in nature. We appreciate the possibility that, when the only real dispute is legal, the resolution of a mixed question may be a legal one, open to plenary appellate resolution. We have said that about some disputes under § 523(a)(8). See Goulet v. Educational Credit Management Corp., 284 F.3d 773, 777 (7th Cir.2002); Roberson, 999 F.2d at 1137. Once again, however, we must remember that the statutory inquiry is “undue hardship,” a case-specific, fact-dominated standard, which implies deferential appellate review. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); Mucha v. King, 792 F.2d 602 (7th Cir.1986). To the extent that the district judge thought that debtors always must agree to a payment plan and forgo a discharge, that is a proposition of law — an incorrect proposition, for the reasons we have given. What remains is a predominantly factual understanding, on which the bankruptcy judge’s findings must prevail. (Educational Credit does not contend, and the district judge did not hold, that any is clearly erroneous.)
As for the second part of the Roberson standard: The bankruptcy judge found that Krieger’s straightened circumstances are likely to persist indefinitely. This is a factual finding and not clearly erroneous. Krieger lives in a rural area with few jobs. She lacks the resources to travel in search of employment elsewhere. Educational Credit contends that she could and should accept jobs that pay less than a paralegal position, but the bankruptcy judge found that she had applied without success and that “[njever has the Court seen such utter futility be the result of a debtor’s job search efforts.” 2012 WL 1155687 at *6, 2012 U.S. Bankr.Lexis 1449 at *16. She is 53 years old and has not held a job since 1986, when she left the work force to raise a family. She did not earn more than $12,000 a year in her working career (between 1978 and 1986). That’s not the sort of background employers are looking for. There is no reason to think that a brighter future is in store; indeed, both the district judge and Educational Credit concede that the result of a 25-year payment plan probably would be *885 no payments, with interest accumulating, followed by forgiveness when Krieger reaches age 78 (forgiveness of the unpaid balance is one inducement to accept a deferred-payment plan).
Finally, although there has been no contest about the first part of the Roberson standard, it is worth recollecting that Educational Credit concedes (as the bankruptcy judge found) that Krieger simply cannot pay. She is essentially out of the money economy and living a rural, subsistence life. She does not have assets or income and, the bankruptcy judge found, is not likely to acquire any.
In Roberson we boiled the three criteria down to “certainty of hopelessness”. 999 F.2d at 1136. That sounds more restrictive than the statutory “undue hardship,” but at all events the bankruptcy judge found that Krieger’s situation is hopeless. That may be unduly pessimistic, but a judge asked to apply a multi-factor standard interpreting an open-ended statute necessarily has latitude; the more vague the standard, the harder it is to find error in its application. The ultimate finding of “undue hardship” is neither clearly erroneous nor an abuse of discretion. The judgment of the district judge is reversed, and the case is remanded with instructions to reinstate the discharge issued by the bankruptcy judge.