In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3702

MARK WARREN TETZLAFF,

*Plaintiff-Appellant*,

*v.*

EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-cv-767 — **Lynn S. Adelman**, *Judge*.

ARGUED APRIL 22, 2015 — DECIDED JULY 22, 2015

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Mark Tetzlaff currently owes approximately $260,000 in student loan debt, which is guaranteed by Educational Credit Management Corporation. When Tetzlaff filed for Chapter 7 bankruptcy in 2012, he sought to have this debt discharged, claiming that repayment constituted an "undue hardship" under 11 U.S.C. § 523(a)(8). After a trial, the bankruptcy court held that Tetzlaff's student debt could not be discharged. The United States District Court for

the Eastern District of Wisconsin affirmed. We, in turn, af-
firm the district court.

## I. Background

Mark Tetzlaff is fifty-six years old and lives in Waukesha,
Wisconsin with his eighty-five-year-old mother; they both
subsist on the income from her Social Security payments.
Tetzlaff is divorced, has no children, and is currently unem-
ployed. From the mid-1990s until 2005, Tetzlaff pursued a
Masters in Business Administration from Marquette Univer-
sity, as well as a law degree from Florida Coastal School of
Law ("Florida Coastal").[1] Most relevant to this appeal, Tetz-
laff took out various federally guaranteed student loans to
finance his graduate education.[2] In 2004, Tetzlaff consolidat-
ed his student loan debt, and Educational Credit Manage-
ment Corporation ("Educational Credit") is now the guaran-
tor for the outstanding loan amount.

Tetzlaff has been unsuccessful at passing a state bar exam
to date (although he has made two attempts). Prior to at-
tending graduate school, Tetzlaff worked as a financial advi-
sor, an employee-benefits consultant, an insurance salesman,
and a stock broker. Over the years, Tetzlaff has struggled
with depression and alcohol abuse; he has also been in-
volved in domestic disputes. Tetzlaff has several misde-

---

[1] Tetzlaff also attended DePaul University College of Law, but was dis-
missed from the program without a degree.

[2] Tetzlaff financed his education at Florida Coastal directly with the
school. Tetzlaff's Florida Coastal debt was not included in this discharge
action. However, as we will explain later, Tetzlaff argues that payments
made to Florida Coastal should influence our analysis of his good faith
efforts to pay the student loan debt at issue in this action for discharge.

meanor convictions, including convictions for disorderly conduct and intimidating a victim. He claims that all of these factors combined make it very difficult for him to secure employment.

In February 2012, Tetzlaff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Wisconsin. At the time, Tetzlaff owed approximately $260,000 in student loan debt, which was guaranteed by Educational Credit. In July 2012, Tetzlaff filed an adversary complaint seeking to discharge his student loan debt; the complaint named two financial institutions (who are not parties to this appeal) as defendants. Educational Credit subsequently filed a motion to substitute itself as a real party of interest, and the bankruptcy court granted this motion.

The bankruptcy court held a trial in May 2014 to determine whether Tetzlaff was eligible to discharge his student loans. The court determined that Tetzlaff failed to show that repaying his student loans would constitute an "undue hardship," and thus found that Tetzlaff could not discharge them. The United States District Court for the Eastern District of Wisconsin affirmed. Tetzlaff appealed.

## II. Discussion

Student loans are generally not dischargeable in bankruptcy unless the debtor proves that excluding the loans from discharge "would impose an undue hardship on the debtor." 11 U.S.C. § 523(a)(8). To determine which situations constitute an "undue hardship," we have adopted the *Brunner* test for student loan discharge proceedings, which requires a debtor to show that:

(1) [he] cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay [his] loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) [he] made good faith efforts to repay the loans.

*In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). A debtor must satisfy each element of the *Brunner* test in order to have his loans discharged. *Id.* at 1135–36. In this case, the bankruptcy court found that Tetzlaff met the first element of the *Brunner* test, but that he failed to meet the second two. Educational Credit does not challenge the bankruptcy court's analysis of the first *Brunner* prong. Thus, we accept for purposes of our analysis that Tetzlaff meets the first *Brunner* requirement, and we proceed to examine the remaining elements: the "additional circumstances" prong and the "good faith" prong. The bankruptcy court found that neither element fell in Tetzlaff's favor.

We review the factual findings of the bankruptcy court for clear error. *Id*. at 1137. In *Krieger v. Educational Credit Management Corp.*, we held that the additional circumstances prong represents a "factual finding," and thus is only reversible if shown to be clearly erroneous. 713 F.3d 882, 884 (7th Cir. 2013). In analyzing the good faith prong, we held that this determination "combines a state of mind (a fact)

with a legal characterization (a mixed question of law and fact)." *Id.* While we acknowledged in *Krieger* that there may be circumstances in which the "only real dispute is legal"— in which case our review would be less deferential—we recognized that the good faith analysis is "a predominantly factual understanding" and that the "undue hardship" inquiry as a whole is "a case-specific, fact-dominated standard, which implies deferential appellate review." *Id.* With such deference in mind, we find that the bankruptcy court's conclusions on the additional circumstances prong and the good faith prong must both be affirmed.

### A. Additional Circumstances

The second prong of the *Brunner* test contemplates whether "additional circumstances exist indicating that [the inability to pay] is likely to persist for a significant portion of the repayment period … ." *Roberson*, 999 F.2d at 1135. We have noted that "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Id.* at 1136 (citing *In re Briscoe*, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981)). While in *Krieger* we noted that the "certainty of hopelessness" standard "sounds more restrictive than the statutory 'undue hardship' [standard]" we also noted that "a judge asked to apply a multi-factor standard interpreting an open-ended statute necessarily has latitude; the more vague the standard, the harder it is to find error in its application." 713 F.3d at 885. Here, the bankruptcy court found that Tetzlaff's financial situation has the ability to improve given that "he has an MBA, is a good writer, is intelligent, and family issues are largely over." The court also concluded that "Tetzlaff is not mentally ill and is able to earn a living." On the

topic of Tetzlaff's mental health, the court mentioned the testimony of Dr. Marc Ackerman—a forensic psychologist hired by Educational Credit—and Dr. Amy Gurka—Tetzlaff's treating psychologist. The bankruptcy court noted that Dr. Gurka diagnosed Tetzlaff with Narcissistic Personality disorder, but that Tetzlaff's "anxiety and depression do not reach clinical levels." The court also noted that tests performed by Dr. Ackerman indicated that Tetzlaff "scored very high on several malingering scales," indicating that Tetzlaff was perhaps feigning his psychological symptoms.

On these facts, the bankruptcy court's analysis of the additional circumstances prong was not clearly erroneous. Given Tetzlaff's academic degrees, prior work experience, and age, we agree with the bankruptcy court that he is capable of earning a living. (In fact, Tetzlaff's capable pro se representation in this case is, in our opinion, an indicator of his marketable job skills.) While Tetzlaff references obstacles related to his mental health, testimony presented to the bankruptcy court indicates that he does not suffer from clinical levels of anxiety or depression, and further indicates that Tetzlaff may, in fact, be exaggerating his symptoms. As we stated in *Roberson*, "undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." 999 F.2d at 1136 (citation and internal quotation marks omitted).

On appeal, Tetzlaff notes that the bankruptcy court did not permit him to present the testimony of two experts that would have helped his case, particularly on the topic of his future ability to secure employment and earn a living. Prior to trial, the bankruptcy court excluded the proposed testi-

mony of: (1) a forensic psychologist who would have testi-
fied that Tetzlaff had memory problems that would likely
prohibit him from ever passing a bar exam; and (2) a voca-
tional counselor who would have testified that Tetzlaff was
unlikely to find employment paying more than $31,000 to
$37,000 per year. The bankruptcy court excluded this testi-
mony due to Tetzlaff's late disclosure of the experts. The
bankruptcy court previously granted three extensions of the
court's pretrial deadline to disclose experts, such that Tetz-
laff had until August 2, 2013 to do so. On April 10, 2014,
Tetzlaff filed an emergency motion seeking permission to
disclose the additional experts, and the bankruptcy court
denied the motion. The district court affirmed, noting that
under Federal Rule of Civil Procedure 16(b)(4), a pretrial
scheduling deadline may only be modified for "good cause."
Tetzlaff explained that it did not occur to him to seek testi-
mony on memory loss until he failed two exams needed to
work in the financial industry in November 2013 (several
months after the expert disclosure deadline had passed). For
the next six months, Tetzlaff apparently gathered the
"memory evidence" that he wished to present at trial, and
then filed the emergency motion with the bankruptcy court
regarding the two additional experts. However, even assum-
ing that Tetzlaff could not have recognized the need for
"memory experts" prior to November 2013, Tetzlaff waited
another six months to raise the issue with the bankruptcy
court (and this was after the deadline for expert disclosure
had been thrice extended). We therefore agree with the dis-
trict court that Tetzlaff did not show good cause for the late-
ness of his expert disclosure, and thus we reject Tetzlaff's
argument that the bankruptcy court erred in excluding his
two proposed experts.

### B. Good Faith

A debtor's good faith efforts to repay his student loans are measured by his ability to "obtain employment, maximize income, and minimize expenses." *Roberson*, 999 F.2d at 1136. Good faith is also assessed by the debtor's demonstrated efforts to pay off his existing loans. In *Krieger*, we recognized that the question of good faith under *Brunner* necessarily implicates the debtor's past efforts to pay down the debt at issue (rather than a resolve to pay the debt in the future, which directly conflicts with the very nature of a loan discharge proceeding). 713 F.3d at 884. The bankruptcy court noted that "[Tetzlaff] repaid much of the loan to Florida Coastal Law School, but nothing on the loan at issue in this adversary proceeding." Drawing on these facts, the bankruptcy court concluded that, as with the additional circumstances prong, Tetzlaff did not meet *Brunner*'s good faith requirement.

Tetzlaff argues that the bankruptcy court erred in refusing to consider his payments to Florida Coastal (which are not included in the instant discharge action) in concluding that he had not made a good faith effort to repay the debt held by Educational Credit. However, Tetzlaff's position is without legal support. Educational Credit points to *In re Roberta Spence*, 541 F.3d 538, 545 (4th Cir. 2008), in which a debtor also sought to discharge student loan debt (also held by Educational Credit) and argued that her attempt to pay Perkins Loans should qualify as a "good faith" effort to repay her Educational Credit debt. The Fourth Circuit noted that "[Spence's] choice to repay some of the Perkins Loans does not demonstrate a good faith effort to repay the student loans held by [Educational Credit]." *Id.*; *see also In re Cun-*

*ningham*, No. 04-2636, 2006 WL 1133923, at *4 (N.D. W.Va. Apr. 26, 2006) (holding that "there is no authority that suggests that a debtor who pays down one loan while neglecting another acts in good faith") Tetzlaff has not identified any competing authority. Additionally, Tetzlaff's argument conflicts with the very nature of the undue hardship analysis, which is an inquiry about the ability of a debtor to pay student loan debt *subject to a discharge action*. *See* 11 U.S.C. § 523(a)(8). The bankruptcy court was not required to consider Tetzlaff's payments to Florida Coastal as evidence of a good faith effort to repay Educational Credit, as his Florida Coastal debt was not included in the discharge action. Furthermore, as the bankruptcy court noted, it seems that Tetzlaff repaid his debt to Florida Coastal largely because he needed the school's cooperation in releasing his diploma and transcript. Thus, Tetzlaff was motivated by certain incentives to pay down his Florida Coastal debt that do not apply to the repayment of his debt held by Educational Credit. Therefore, we decline to hold that the bankruptcy court erred when it refused to consider the repayment of debt not included in the loan discharge proceeding before it in making a determination of good faith under the *Brunner* test. Further, we affirm the bankruptcy court's conclusion that Tetzlaff has not made a good faith effort to pay down his student loan debt.

### III. Conclusion

Accordingly, we AFFIRM.