Dischargeability of Students Loans under § 523(a)(8)
A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
...
(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for-
*2 (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual; ...
In Matter of Roberson , 999 F.2d 1132, 1135 (7th Cir. 1993), the Seventh Circuit Court of Appeals adopted the three-prong test for undue hardship articulated by the Second Circuit Court of Appeals in Brunner v. New York State Higher Educ. Servs. Corp. , 831 F.2d 395, 396 (2d Cir. 1987) (per curiam ), as follows:
(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;
(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
(3) that the debtor has made good faith efforts to repay the loans.
A debtor/plaintiff "has the burden of establishing each element of the test by a preponderance of the evidence." Goulet v. Educ. Credit Mgmt. Corp. , 284 F.3d 773, 777 (7th Cir. 2002) (citing Grogan v. Garner , 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) ); In re Brooks, Adv. Pro. No. 17-50156, 2017 WL 4117329 at *1 (Bankr. S. D. Ind. September 14, 2017). The Plaintiffs must prove all three prongs; the failure to prove any one of them defeats their claim of dischargeability. Goulet , 284 F.3d at 777.
First Prong of Brunner Test: Cannot Maintain Minimal Standard of Living
The first prong of the Brunner test requires a showing that the Plaintiffs cannot maintain even a minimal standard of living, based on current income and expenses, if they were forced to repay the student loans. Brunner , 831 F.2d at 396 ;
*58 Roberson , 999 F.2d at 1135. Bankruptcy courts have routinely applied this requirement as the bare minimum to assert a claim of "undue hardship". Id. This prong requires the court to review the Plaintiffs' current financial circumstances to determine if repaying the student loans would cause their standard of living to fall below a standard that is minimally necessary. Id. A "minimally necessary" standard of living is one that meets the basic needs of the debtor and the debtor's dependents for food, shelter, clothing and medical treatment. In re Johnson , 577 B.R. 895, 903 (Bankr. D. Kan. 2017). "Simply put, it is living 'within the strictures of a frugal budget in the foreseeable future.' " In re Innes , 284 B.R. 496, 504 (D. Kan. 2002). This prong does not require the debtor to live at or below the poverty level in order to repay the loan; however, the loan will still be nondischargeable even if the debtor shows that repayment would require the debtor to make major personal and financial sacrifices and to live within a restricted budget. In re Kehler , 326 B.R. 142, 147 (Bankr. N. D. Ind. 2005) ; In re Faish , 72 F.3d 298, 306 (3rd Cir. 1995) (first prong of Brunner test requires more than a showing by the debtors that their finances are "tight" or that they would have to make some personal and financial sacrifices in order to repay the loans). A court may consider whether the debtor can pay an amount under an IBR plan and still maintain a minimal standard of living. In re Conner , 526 B.R. 218, 225 (Bankr. E.D. Mich. 2015) ; In re Williams , No. 15-BK 38704, 2018 WL 1229719 at *4 (Bankr. N. D. Ill. March 8, 2018) ; In re Goforth , 466 B.R. 328, 332 (Bankr. W. D. Pa. 2012).
The Plaintiffs have no dependents. DC and Brenda earn $ 19.70 and $ 19.23 an hour respectively and both are employed full time. The Plaintiffs have no physical or mental disabilities that would compromise their ability to continue to work full time. The Plaintiffs each have associates degrees and possess the skills to maintain gainful employment. Both before and after the date of the chapter 7 filing, the Plaintiffs frequently dined out. They have not altered their lifestyle post-filing and have had sufficient funds to pay for hair salons, bikes, and an online personal shopping service while maintaining more than a minimal standard of living.
The Plaintiffs were in their early forties when they decided to attend school full time and enrolled at Marian University in 2005. A main contention of theirs is that they each will be able to work at most another 20 years and the loans will not be paid off by then. The current ages of the Plaintiffs in regard to their student loans is a direct result of the extended period of education at a relatively late age.
Brenda was participating in an IBR plan at $ 96 a month shortly before the bankruptcy was filed but ceased making those payments. Schedules I and J show that the Plaintiffs still have $ 196 a month left over even when factoring in the $ 96 IBR and the $ 918 monthly private Navient loan payment. The Navient loan has been reduced to $ 241.40 a month for each of the Plaintiffs, or $ 482.80 per month for both. The Plaintiffs' affidavits state that their current monthly payment under an IBA REPAYE program would be $ 234.52 for each of them or a total monthly payment of $ 469.05. The combined monthly payment for both loans would amount to $ 951.85, which is still less than the $ 1014 amount accounted for in the Plaintiffs' I and J with $ 196 left over. There is additional room in the budget considering that I and J overstated the actual amount of charitable contributions by $ 225 a month. Nothing in the record suggests that the Plaintiffs' income will decrease if they remain employed full time. To the contrary, *59 DC has the potential for an increase in pay after he completes his apprenticeship. The Plaintiffs would maintain an above-minimal standard of living even if they reduced the number of times they dine out and went to hair salons and cancelled their personal online shopping subscription. Reducing their retirement contribution from the maximum they currently take would further allow them to pay their student loan under an IBR plan while elevating already above-minimal standard of living. The Court finds that repayment of the loans would not cause the Plaintiffs to fall below the minimal standard of living, and therefore, the Plaintiffs have not met their burden of proof on the first Brunner factor. The court will address the other two prongs of the Brunner test despite the fact that it is not obligated to do so since the Plaintiffs failed to prove the first Brunner prong. See, Goulet, 284 F.3d at 777 ("if the debtor fails to establish any one of the elements, the test has not been met and the court need not continue with the inquiry").
Second Prong of Brunner Test: Additional Circumstances - State of Affairs Likely to Persist
The second Brunner prong requires the Plaintiffs to show "additional circumstances exist indicating that [the inability to pay] is likely to persist for a significant portion of the repayment period..." Roberson , 999 F.2d at 1135. This prong has been described as requiring a "certainty of hopelessness, not simply a present inability to fulfill financial commitment." Id. at 1136. A debtor does not prevail on this prong if his or her financial situation has the ability to improve. In re Tetzlaff , 794 F.3d 756, 759 (7th Cir. 2015).
Brenda's continued full time employment with no decrease in wages and DC's potential to earn more upon completion of his apprenticeship defeats the Plaintiffs' claim under this prong. The court is cognizant that the Plaintiffs are in their late fifties but courts have rejected arguments that age alone satisfies this prong. See, In re Fabrizio , 369 B.R. 238, 249 (Bankr. W. D. Pa. 2007) ("the simple fact that the debtor will have to pay his educational loans later into life is merely a consequence of his decision to incur debt for educational purposes during his thirties"). The Plaintiffs' current and future financial outlook is not a "certainty of hopelessness". Plaintiffs have failed to prove this prong of the Brunner test.
Third Prong of the Brunner Test: Good Faith
The third Brunner factor looks at the debtor's good faith in repaying the student loan which is the subject of the dischargeability proceeding. Tetzlaff , 794 F.3d at 761. Considered under this prong is the debtor's ability to "obtain employment, maximize income and minimize expenses". Roberson , 999 F.2d at 1136. Some courts consider a debtor's efforts to seek loan consolidation or a repayment plan which would make the debt less onerous a factor under this prong. In re Spence , 541 F.3d 538, 544 (4th Cir. 2008). The Plaintiffs point out that the Seventh Circuit, however, has held that a debtor's failure to participate in such a program alone should not have bearing on whether the debtor has made good faith efforts to repay the loans. In re Krieger , 713 F.3d 882, 884 (7th Cir. 2013).
Krieger involved a 52-year old debtor who attended paralegal school and had sent out over 200 job applications during the past decade, had not worked in 25 years, lived in a rural area with her mother where few jobs were available, and was described by the court as "destitute". Id. at 883. The bankruptcy court found that the debtor demonstrated undue hardship *60 and determined the student loan was dischargeable. The district court reversed and found that the debtor failed on the third prong of good faith effort to repay because she had not enrolled in an IBR program that would have offered her a 25 year repayment schedule. The Seventh Circuit reversed and agreed with the bankruptcy court that the loan was dischargeable. It stressed that a good faith effort to repay entailed a debtor's past efforts to repay, not a commitment to future efforts to repay such as participating in an IBR program. See also, In re Williams , No. 18-2762, 2019 WL 517608 at *2 (7th Cir. February 21, 2019) (with respect to the debtor's good faith effort to repay the loan, the Court stated, "[w]e look to his past efforts to pay down his loan", not his commitment to pay it in the future). If such lack of participation were indicative of how a debtor was not acting in good faith, then "no educational loan ever could be discharged, because it is always possible to pay in the future should prospects improve." Krieger , 713 F.3d at 884.
While Krieger does not require debtors to participate in IBR programs to demonstrate their good faith, Krieger is distinguishable from the Plaintiffs' situation here. Even though the district court held, and was reversed on the finding, that Ms. Krieger did not prove undue hardship, it nevertheless found that Ms. Krieger had paid as much as she could during the 11 years since receiving the loans. Id. at 884. That cannot be said of the Plaintiffs, given their maximum retirement contributions and spending habits. Furthermore, Brenda actually chose to participate in an IBR program at $ 96 a month pre petition and simply quit paying once the bankruptcy was filed. The reduction in the Navient loan monthly payment and the overestimation of the Plaintiffs' charitable contributions easily would have freed up sufficient funds for Brenda to continue making this payment. Defendant's exhibits 8 and 9 provide that as of January 12, 2018, DC had paid $ 292. Brenda's $ 96 IRB payments are not reflected, so the amount of her loan payments made before she ceased making them is not known. DC's loan is still in deferment, and his attempt to discharge it before it becomes due is not indicative of a good faith attempt to repay it. The Plaintiffs have neither maximized their income nor minimized their expenses and have not made a good faith effort to repay the loans and therefore they fail under this third prong.
Partial Discharge under the Fecek Case
The Plaintiffs argue that at least a portion of their student loans should be discharged, citing the Fecek case[2] decided by my colleague Bankruptcy Judge James Carr. Fecek involved a 43 year old single above-median income debtor who had no dependents. She attempted to discharge private loans with Sallie Mae that totaled more than $ 279,000. The debtor's contractual monthly payment on these loans was between $ 2,000 and $ 2677. The debtor was employed full time as a registered nurse earning $ 22.70 an hour. Her monthly net pay was $ 3033.52 and her monthly expenses on her Schedule J were $ 3002.10, which included a projected monthly payment of $ 250 to Sallie Mae. The debtor also had federal loans that were backed by the United States government and had entered into an IBR plan with a monthly payment of $ 450. There was no income based alternative repayment with respect to the Sallie Mae loan because it was a private loan and could not be reduced without Sallie Mae's cooperation, *61 which Sallie Mae had refused. 2014 WL 1329414 at *6-7.
Judge Carr found that repayment of the loan would not afford the debtor even a minimal standard of living. He also concluded that the debtor would have been unable to pay the entire amount during any reasonable repayment period and that she made good faith attempts to pay the loan and to reach out to Sallie Mae to make alternative payment arrangements. Judge Carr determined that the debtor was entitled to a partial discharge of the student loan but had the financial wherewithal to pay $ 500 a month to Sallie Mae every month for 180 months (15 years). He gave her a six-month deferment before commencing payments. Id. at *9.
Fecek is distinguishable from this case in that the loans at issue here are eligible for treatment under an IBR repayment option and in fact such an option has been offered. The Plaintiffs' combined monthly loan payment under a REPAYE program would be $ 469.05. Plaintiffs in their reply brief contend that their combined contractual monthly loan payment would be $ 1691.48 a month which would comprise nearly 37% of the Plaintiffs' current monthly net income of $ 4597.53. They also contend that the interest on their loans is accruing at $ 720.46 a month. They point out that the REPAYE monthly payment would not be enough to pay the interest, let alone reduce the indebtedness, on the loans. The result at the end of a 20-year repayment period - when the Plaintiffs are in their mid to late 70's-would be a balance owed that is as large if not larger than the current outstanding loans. Presumably, the unpaid portion of the loan would be forgiven and discharged at the end of the 20-year period and the amount of the forgiven debt would be taxed as income to the Plaintiffs, creating a substantial tax bill.
A potential tax liability at the end of the repayment period is too speculative to constitute an undue hardship. In re Archibald , 280 B.R. 222, 229 (Bankr. S. D. Ind. 2002) ("[t]he charge of the Court under § 523(a)(8) is to determine the issue of undue hardship as of today, not some date in the future."); In re Rhodes , 464 B.R. 918, 922 (W.D. Wash. 2012). If the Plaintiffs' participation in an IBR plan results in income from the cancelled debt, they are taxed only if their assets exceed their liabilities. The amount of the cancelled debt is counted as a liability under this "insolvency exception". Educ. Credit Mgmt. Corp. v. Jesperson , 571 F.3d 775, 782 (8th Cir. 2009) ; In re Greene , 484 B.R. 98, 116-17 (Bankr. E. D. Va. 2012). The Plaintiffs' entire argument is based on their belief that they do not now, nor will they in the future, have sufficient disposable income or assets to live above a meager standard of living. If that is true, it is unlikely that they will incur a significant tax burden at the end of the repayment period.
The burden of proving undue hardship under § 523(a)(8) is "rigorous". In re Young , 563 B.R. 540, 553 (Bankr. W. D. Ark. 2016). Courts have denied discharge of student loans owed by debtors in far more dire financial straits than that of the Plaintiffs. See, Tetzlaff , 794 F.3d at 761 (56-year old unemployed debtor with a law degree but who did not pass the bar exam, who lived with mother and who suffered from depression and alcohol abuse); In re Hurst , 553 B.R. 133, 140 (8th Cir. BAP 2016) (66-year old debtor with hearing and vision problems and who was employed part-time); Young , 563 B.R. at 553 (married debtors, ages 48 and 36, of which wife with a masters degree in teaching was unemployed, with two dependents, one of which was diagnosed with Asberger's Syndrome and ADHD);
*62 Williams , 2018 WL 1229719 at *6 (52-year old debtor with no dependents, lived with aunt, held an MBA, but suffered from a learning disability and depression, applied for 73 jobs over three years, held only seasonable jobs and received $ 294 a month in food stamps); In re Cavender , Adv. Pro. 16A00657, 2017 WL 8218841 (Bankr. N. D. Ill. November 27, 2017) (67-year old unemployed debtor, who received $ 750 a month in social security benefits); In re Butler , Adv. No. 14-07069, 2016 WL 360697 (Bankr. C. D. Ill. January 27, 2016) (unemployed 44-year old debtor with no dependents who lived with her mother, whose only income was $ 274 per week in unemployment benefits that were set to run out soon, and who had paid at least $ 15,000 of her student loans). "With the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses." In re Roberson , 999 F.2d 1132, 1136 (7th Cir. 1993), Jesperson , supra at 782.
The Defendant has satisfied its burden and has put forward specific evidence that repayment of the loans will not present an undue hardship to the Plaintiffs. The Plaintiffs have failed to come forward with specific evidence disputing that fact. There is no genuine issue of material fact regarding the Plaintiffs' undue hardship and the debt owed to the Defendant is nondischargeable under § 523(a)(8) as a matter of law. The court will enter judgment accordingly.
SO ORDERED.

In re Fecek , Adv. No. 13-50089, 2014 WL 1329414 (Bankr. S. D. Ind. March 31, 2014).